ELLIS v. INMAN, POULSEN & CO. et al.

(Circuit Court of Appeals, Ninth Circuit. June 6, 1904.)

No. 1,000.

1. MONOPOLIES—ANTI-TRUST LAW—COMBINATION IN RESTRAINT OF INTERSTATE COMMERCE.

In determining whether or not a combination is in violation of the federal anti-trust law, as in restraint of interstate commerce, it is immaterial that such is not its ultimate object, which is in most cases to increase the trade and profits of the parties to such combination; nor is it material to ascertain what proportion the resulting restraint of interstate commerce bears to other results. The true inquiry is whether it tends directly to appreciably restrain interstate trade, and, if it does, it is within the statute, although such effect may not be so considerable as its other effects.

2. SAME.

A complaint alleged that plaintiff was a builder doing business in Portland, Or.; that in such business he purchased large quantities of rough lumber from mills located at Vancouver, Wash., which was seven miles from Portland, but that such mills did not manufacture finished or kiln-dried lumber; that defendants, who comprised all the manufacturers and dealers in Portland, combined to fix exorbitant prices on all lumber sold by them, and to compel all consumers in Portland to pay such prices by refusing to sell any finished lumber at any price to such consumers as bought lumber of any kind from other dealers, except on condition that such consumer pays to defendants the difference between the price he paid for lumber so bought from others and the price charged therefor by defendants and promises to buy all his lumber thereafter from defendants; that the purpose and effect of such combination was to prevent plaintiff and other consumers from buying lumber at Washington mills, and to obtain a monopoly of the trade in Portland at unreasonable and exorbitant prices. Held, that the combination charged constituted a violation of the federal anti-trust act, its effect being to directly restrain interstate commerce, and that the complaint stated a cause of action thereunder for the recovery of damages alleged to have resulted to plaintiff.

In Error to the Circuit Court of the United States for the District of Oregon.

For opinion below, see 124 Fed. 956.

The plaintiff in error brought an action against the defendants in error under the provisions of the act of Congress of July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], entitled "An act to protect trade and commerce against unlawful restraints and monopolies," to recover damages resulting from a combination of the defendants in error to prevent him from purchasing lumber in the city of Vancouver, Wash., to be used in the city of Portland, Or. The substantial averments of the complaint are as follows: That the plaintiff in error is engaged in the business of constructing houses and other buildings in the city of Portland and selling the same for profit, and in the business of constructing such buildings on contracts with his customers; that the defendants in error are engaged in the business of manufacturing and selling both rough lumber and seasoned or kiln-dried lumber at Portland, Or., and that they are the only manufacturers of such lumber in or adjacent to said city who sell lumber therein; that there are persons engaged in the business of manufacturing and selling rough lumber at the city of Vancouver and at other points in the state of Washington, and that, until interfered with by the acts and combination of the defendants in error, the plaintiff in error could and did purchase at and import from the city of Vancouver large quantities of lumber for use in his business at Portland; that, in order to carry on his said business, it is necessary for him to purchase and use large quantities both of rough lumber and of seasoned or kiln-dried lumber; that the mills at Vancouver produce only rough lumber, and that the seasoned or kiln-dried lumber required by the plaintiff in his business can only be procured from the defendants in error, and he is absolutely dependent upon them for his supply thereof; that on July 2, 1902, the other defendants in error organized the defendant City Retail Lumber Company, and for the purpose and with the intent of creating a monopoly of the manufacture and sale of lumber for local use in the markets of the city of Portland, and of controlling and restricting the output of lumber from defendants' said mills, and fixing and controlling the price of lumber in said Portland market, and arbitrarily advancing said price and demanding and receiving excessive and unreasonable prices for the lumber manufactured and sold by them, and preventing the shipment of lumber by the said manufacturers in the state of Washington from said state to the city of Portland, and preventing the sale in the city of Portland of lumber manufactured in the state of Washington, and preventing the plaintiff in error and all other contractors and builders in Portland from purchasing lumber from any dealers other than the defendants, and particularly from said manufacturers in the state of Washington, did conspire, confederate, and agree together that they would sell lumber in the Portland market only through said City Retail Lumber Company at prices to be fixed by it and to persons to be designated and approved by it; that thereafter the entire sales of lumber in the Portland market from all the defendants in error were placed in the control of said City Retail Lumber Company for the purpose and with the intent of preventing the plaintiff in error and other contractors and builders in Portland from purchasing lumber from said manufacturers in the state of Washington, and that the defendants in error further conspired and agreed to adopt such means and prescribe and enforce such burdens and penalties as might be necessary to carry out said purpose, and thereby enable them to fix a price on lumber in the city of Portland, and control the output and sales of lumber therein; that to carry out said purposes the defendants in error have employed agents to watch the construction of all buildings in the city of Portland, and ascertain the sources from which lumber used therein is procured, and to report to the City Retail Lumber Company all buildings for the construction of which any lumber was procured from said manufacturers in the state of Washington, and that upon such report the defendants in error would refuse to supply any lumber upon any terms to such contractor, builder, or other consumer who purchased any lumber for use in Portland from said manufacturers in the state of Washington, and have refused to sell any lumber to such contractor, builder, or other consumer, except upon the condition that he pay them, in addition to the price charged by them for lumber required from them, the difference between the price he paid for the lumber so purchased in the state of Washington and the price then charged by them

for the same quantity of similar lumber, and the further condition that he promise them to purchase no more lumber from said manufacturers in the state of Washington, and that in all cases where the contractor, builder, or other consumer had procured a sufficient supply of rough lumber from manufacturers other than the defendants in error, and bought from manufacturers in the state of Washington, the defendants in error have refused to sell any finished, seasoned, or kiln-dried lumber to such contractor, builder, or other consumer, except upon his making such payment and such promise; that by these means the defendants in error have compelled all contractors and builders in Portland to cease buying lumber from the mills in the state of Washington, and have been enabled to and do control the output of lumber sold in the market in Portland, and have fixed extortionate prices therefor; that in March, 1903, in the course of his business, the plaintiff in error purchased from a manufacturer in Vancouver, Wash., and had shipped to and delivered to him at Portland, a large quantity of rough lumber at a price of $250 less than was then charged by the defendants in error for the same quantity of like lumber in Portland, and the plaintiff used the same in the construction of buildings; that on March 20, 1903, he required for use in the construction of said buildings large quantities of finished and seasoned or kiln-dried lumber, and was and has been unable to procure the same from any manufacturer or dealer other than the defendants in error, and that on or about that date he applied to the defendants in error to purchase such lumber, to wit, about 7,000 feet of flooring, about 7,000 feet of ceiling, and about 9,000 feet of rustic, which lumber was so needed by him in his business, and offered to pay them therefor the regular price charged by them for the same, but that because of his purchase of lumber at Vancouver, Wash., the defendants in error refused to sell him said or any lumber upon any terms, and so refused for a period of two months, and still refuse, unless the plaintiff in error pay them, in addition to the prices charged by them for the lumber which he wished to purchase from them, the sum of $250, the difference between the price he paid for lumber in Vancouver and the price they charged for the same quantity and quality at Portland, and unless, in addition thereto, he promise them in the future to purchase no lumber from any manufacturer or dealer in the state of Washington; that the plaintiff in error refused to comply with said conditions, and was unable to procure any lumber from the defendants in error; that at all the times mentioned in the complaint the defendants in error have had on hand and for sale in the city of Portland ample supplies of lumber of the quantity and kinds that the plaintiff in error required, and during all said time the plaintiff in error has been ready and able and has offered to pay therefor the regular prices charged by the defendants in error, but they have so refused to sell the same in pursuance and furtherance of their conspiracy, and for the purposes and with the intent above stated, and for the reason that the plaintiff in error had purchased lumber from said manufacturers in the city of Vancouver, and for the purpose and with the intent of preventing him from purchasing lumber from said manufacturers in the city of Vancouver and forcing him to purchase the same from the defendants in error, and for the purpose of punishing and injuring him for having made such purchase in Vancouver, and not for any other reasons. The plaintiff in error alleged that he was damaged in the sum of $7,000 through his inability to continue his business and through loss of profit on his business during the building season of 1903, and the loss of custom and good will of his said business; in the sum of $500 through the delay caused in the construction of two certain buildings and from being compelled to use unseasoned and inferior lumber in their construction; in the sum of $1,000, caused by delay in the construction of a certain building which he had contracted to build for the price of $4,000, and by the exposure of said building to the rains, and by being required to use unseasoned and inferior lumber in finishing the same, and by being unable to secure payment on his contract on that account; in the sum of $25 through being compelled by reason of said combination to purchase in the month of April, 1903, rough lumber from them at their own price, which was $25 in excess of the cost of the same lumber if purchased in Vancouver and shipped therefrom to Portland. The defendants in error filed demurrers to the complaint on the ground

that it did not state facts sufficient to constitute a cause of action. The demurrers were sustained, and the complaint was dismissed, with costs to the defendants in error. To review that judgment the plaintiff in error has sued out this writ of error.

Veazie & Freeman, for plaintiff in error.

Cake & Cake, for defendants in error Inman, Poulsen & Co.

Wm. D. Fenton, for remaining defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question presented is whether the complaint states a cause of action. It alleges that an interstate trade in lumber had existed between purchasers in the city of Portland, in the state of Oregon, and manufacturers at Vancouver, in the state of Washington, about seven miles distant from Portland, and that the defendants in error, who constitute all the manufacturers of lumber in the city of Portland, formed a combination for the purpose of preventing the importation of lumber from the state of Washington for use in Portland, and that they adopted means such as to accomplish their purpose. It is contended by the defendants in error: First. That the combination does not operate directly upon the manufacture, sale, or transportation of an article of interstate commerce; that it only incidentally and collaterally relates to or affects the sale and transportation of lumber from another state, and that it is therefore not within the prohibition of the act. Second. That the injury complained of by the plaintiff in error was not the direct or unavoidable result of an illegal combination, but that such injury, if any, resulted from the refusal of the defendants in error to deal with the plaintiff in error except upon terms acceptable to them. The interpretation of the statute applicable to the case is found in Anderson v. United States, 171 U. S. 615, 19 Sup. Ct. 54, 43 L. Ed. 300, in which it was said:

"Where the subject-matter of the agreement does not directly relate to and act upon and embrace interstate commerce, and where the undisputed facts clearly show that the purpose of the agreement was not to regulate, obstruct, or restrain that commerce, but that it was entered into with the object of properly and fairly regulating the transaction of the business in which the parties to the agreement were engaged, such agreement will be upheld as not within the statute, where it can be seen that the character and terms of the agreement are well calculated to attain the purpose for which it was formed, and where the effect of its formation and enforcement upon interstate trade or commerce is in any event but indirect and incidental, and not its purpose or object. * * * If an agreement of that nature, while apt and proper for the purpose thus intended, should possibly, though only indirectly and unintentionally, affect interstate trade or commerce, in that event we think the agreement would be good; otherwise there is scarcely any agreement among men which has interstate or foreign commerce for its subject that may not remotely be said to in some obscure way affect that commerce, and to be therefore void."

Also, in United States v. Joint Traffic Association, 171 U. S. 568, 19 Sup. Ct. 31, 43 L. Ed. 259, where it was said:

"The effect upon interstate commerce must not be indirect or incidental only. An agreement entered into for the purpose of promoting the legitimate

business of an individual or corporation, with no purpose to thereby affect or restrain interstate commerce, and which does not directly restrain such commerce, is not, as we think, covered by the act, although the agreement may indirectly and remotely affect that commerce."

Does the combination which is set forth in the complaint in the present case tend directly to restrain interstate commerce? The complaint alleges that such was its purpose, and that such is its effect. Notwithstanding these allegations, however, it is clear that, if it can be seen from the facts set forth that the restraint is only indirect and incidental, no cause of action is stated within the intendment of the act. But it is equally clear that the distinct allegation of the purpose of such a combination may be taken into consideration in connection with the facts alleged. If it be true that the purpose of the defendants in error was as alleged, how can it be said of any means which they adopt to effectuate the purpose that they accomplish it only indirectly and incidentally? It is true that the complaint alleges the existence of another purpose—the purpose to obtain excessive and unreasonable prices for lumber; but one of the purposes alleged in attaining that end is the purpose of shutting off the Portland trade in Washington lumber. In determining whether or not the restraint of trade is the direct and necessary result of the combination, no assistance is to be found by pursuing the inquiry further and ascertaining whether its main purpose and chief effect are to foster the trade and increase the business of those engaged in it. It may be conceded that the main purpose of all such combinations is to foster the trade and increase the profits of those who are engaged in them, that the restraint of interstate trade as such is not their ultimate object, and that the effect of the combination on interstate trade is to the members of the combination an immaterial matter. Nor is it material, we think, to inquire what is the chief effect of the combination? The true inquiry is, does it tend directly to appreciably restrain interstate commerce? It is not material to ascertain just what proportion the resulting restraint of interstate commerce bears to other effects or results of the combination. Nor is the court called upon to weigh the effects, or to determine that, if the effect in restraining interstate trade is not so considerable as other effects, the combination is not forbidden. In the case of W. W. Montague & Co. v. Lowry et al., 24 Sup. Ct. 307, 48 L. Ed. 608, in which the Supreme Court very recently affirmed the judgment of this court, a combination was made between certain dealers of tiles, mantels, and grates in the cities of San Francisco, Sacramento, and San José, who were members of an association formed for the purposes of the combination, and all of the manufacturers of such articles in the other states of the Union. By the terms of the agreement the manufacturers bound themselves not to sell goods in San Francisco, or within a radius of 200 miles therefrom, to any one who was not a member of the association. There was no manufacturer of such goods in California. The plaintiffs who brought the action were dealers in tiles, but not members of the association. They were unable to purchase goods of the manufacturers. The only restraint on trade was that which resulted from the inability of the plaintiffs to buy goods on equal terms with members of the association for use at their place of business in San Francisco. It could not be

demonstrated in that case that by reason of the agreement the total amount of interstate trade would be at all diminished. But the Supreme Court held that it was sufficient if it could be seen that the tendency of the combination was such as to diminish such interstate trade. Said the court, "The amount of trade in the commodity is not very material."

The defendants in error admit that the business of importing lumber from the state of Washington into the city of Portland may be affected by the combination; but they say that the result is due, not to their combination to refuse to sell to purchasers in the city of Portland who make such importations, but to the inability of the Washington mills to supply the Portland market with kiln-dried or finishing lumber; and that the combination is not the direct and proximate cause of the inability of the Washington mills to sell lumber in the city of Portland. But that very inability is one of the essential facts which aid to create the situation which is complained of. It is a fact conceded to exist, and it is taken advantage of by the defendants in error. But for the existence of that fact, it is safe to assert that the combination would not have been formed. The facts must be reckoned with as they are found. Can it be said that the absence of factories and plants outside of the combination capable of producing finishing lumber so as to compete with the defendants in error shall relieve them from responsibility for their acts? Does the fact that the whole combination and its success are made possible by the adventitious circumstance that no one has yet seen fit to invest the capital necessary to establish a competing plant at Vancouver render the restraint of interstate commerce effected by the combination any the less direct and necessary? If such is the law, it follows that, to secure immunity for every such combination, it is necessary only to bring into it all manufacturers of its line of goods, and to intrench it behind the proposition that the resulting restraint of trade comes, not from the combination, but from the inability of others to supply the market. The mere statement of the proposition is its refutation. With equal reason it might have been urged in the Montague Case that the restraint of interstate trade was owing, not to the combination, but to the fact that there was no independent manufacturer of tiles from whom the plaintiffs in that case could purchase.

The opinion of the trial court in sustaining the demurrers seems to have been largely influenced by the argument that if the defendants in error, instead of combining to advance prices and to refuse to sell to certain purchasers, had combined to reduce the prices of all kinds of lumber to all purchasers, it would have had an equal tendency to destroy the trade in lumber between Vancouver and Portland, and yet in so doing the defendants in error could not have been accused of acting unlawfully in restraint of that trade. But is this argument sound, and does it lead to the conclusion which was reached by the court? We submit that a combination which is made for the specific purpose of restraining interstate trade and which accomplishes that purpose, restrains it directly, and that, if such be its intention and its direct tendency, it is under the ban of the act, whether it include an agreement to raise prices or an agreement to lower them. The mere agreement to raise or lower prices, as was said by the court in the E. C. Knight Case, 156 U. S. 16,

15 Sup. Ct. 255, 39 L. Ed. 325, might tend to restrain external trade, "but the restraint would be an indirect result, however inevitable and whatever its extent; and such result would not necessarily determine the object of the contract, combination, or conspiracy." But this is far from saying that a combination to raise or lower prices aimed directly at the destruction of a particular branch of interstate trade would accomplish that result indirectly, and therefore lawfully. In United States v. Freight Association, 166 U. S. 328, 17 Sup. Ct. 554, 41 L. Ed. 1007, the court, referring to the terms of the act, said:

"The plain and ordinary meaning of such language is not limited to that kind of contract alone which is in unreasonable restraint of trade, but all contracts are included in such language, and no exception or limitation can be added without placing in the act that which has been omitted by Congress."

The same view was reaffirmed in United States v. Joint Traffic Association, 171 U. S. 558, 19 Sup. Ct. 25, 43 L. Ed. 259. In United States v. Swift & Co. (C. C.) 122 Fed. 534, Judge Grosscup, referring to the doctrine of the two cases just cited, well said:

"It is clear from them that restraint of trade is not dependent upon any consideration of reasonableness or unreasonableness in the combination averred; nor is it to be tested by the prices that result from the combination. Indeed, combination that leads directly to lower prices to the consumer may, within the doctrine of these cases, even as against the consumer, be restraint of trade; and combination that leads directly to higher prices may, as against the producer, be restraint of trade. The statute, thus interpreted, has no concern with prices, but looks solely to competition, and to the giving of competition full play, by making illegal any effort at restriction upon competition."

From the recent case of Northern Securities Co. v. United States, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, it would appear that when the questions involved in the opinions of the Supreme Court in the two cases last above quoted shall again come before that court for consideration the majority of the members of the court may hold that the rulings in those cases should have gone no further than to decide that the contracts there presented were unreasonable restraint of interstate trade, and were, as such, within the scope of the act. But if we adopt that view of the law, and assume that the purpose of the act was to place a statutory prohibition only on those combinations which are unreasonable and against public policy, as well as in direct restraint of interstate trade, the present combination, as it is set forth in the complaint, clearly comes within the prohibition. The complaint alleges that the prices placed upon all lumber by the defendants in error are excessive and unreasonable, and that for unfinished lumber their price is double the price of Vancouver lumber of the same kind. The combination, as it is stated in the complaint, is more than a mere agreement to raise prices. It includes also an agreement to coerce purchasers of lumber by other means, and to compel them to desist from the interstate trade. Taking together all the allegations of the complaint, it appears that an active trade in lumber between the Vancouver mills and the Portland consumers of lumber has been restrained by the acts of the defendants in error. By combining as they did they wielded a power that no individual action could possess. They possessed the power to

ruin the business of any Portland contractor who imported lumber from the adjoining state, and they exercised that power. Restraint of the trade resulted therefrom, and the restraint was the direct and necessary result of a combination made to carry out that specific purpose. If the allegations of the complaint be true, the defendants in error have violated the prohibition of the act, and are answerable to the plaintiff in error in damages.

The judgment of the Circuit Court is reversed, and the cause remanded for further proceedings not inconsistent with these views.