## BUYER v. GUILLAN et al.

(Circuit Court of Appeals, Second Circuit. February 2, 1921.)

### No. 154.

Monopolies ⬯12(2)—Combination in "restraint of interstate commerce."

An agreement between members of labor unions, comprising longshoremen and others concerned with the handling of merchandise shipped by water at the port of New York, that they would not handle any merchandise transported or operated on in any way by any individual, firm, or corporation refusing to recognize the unions, pursuant to which employés of a steamship company, who were members of such unions, refused to check, weigh, or load merchandise offered by complainant for interstate shipment, on the ground that it was brought to the pier by a transfer company which employed both union and nonunion men, and the steamship company refused to receive the shipment because its employés would not handle it, though the transfer company offered to load it, *held* to constitute an unlawful combination in restraint of interstate commerce, in violation of the Sherman Anti-Trust Act (Comp. St. §§ 8820–8823, 8827–8830), and to entitle complainant to an injunction in a suit in a District Court, brought under Judicial Code, § 24 (23), Comp. St. § 991 (23).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Combination in Restraint of Trade.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Samuel Buyer, doing business as Samuel Buyer & Co., against William S. Guillan, the Old Dominion Transportation Company, and others. From an order vacating a restraining order and denying a motion for preliminary injunction, complainant appeals. Reversed.

Walter Gordon Merritt, of New York City (Austin, McLanahan & Merritt, of New York City, of counsel), for appellant.

Gilbert & Gilbert, of New York City, for appellees Carney and others.

Mann Trice, of New York City (James F. O'Neill, of New York City, of counsel), for appellees Quinn and others.

Loomis, Barrett & Jones, of New York City (H. L. Loomis and Stephen A. D. Jones, both of New York City, of counsel), for appellees Guillan and others.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is an appeal from an order of Judge Augustus N. Hand, vacating a restraining order granted by Judge John C. Knox, and denying a motion for a preliminary injunction in a

suit arising under section 24 (23) of the Judicial Code (Comp. St. § 991 [23]). The plaintiff is engaged in the business of manufacturing and selling elastic garters and notion specialties, having his principal office and salesroom in New York City and a factory at Norfolk, Va., and another at Norwich, Conn.

The defendant Old Dominion Transportation Company is a common carrier, and the only common carrier by water between New York City and Norfolk, Va. The defendant Guillan is the company's general agent in New York City. The defendant Ettenger is chief clerk of the New York office, and the defendant John E. Ryan a checker. The other defendants are labor unions connected with the shipping of goods by water from this port, and are organized into voluntary unincorporated associations as follows:

The International Brotherhood of Teamsters, Chauffeurs, Stablemen, and Helpers has local unions throughout the United States, among which is the Drivers' & Chauffeurs' Local Union No. 807, engaged in driving horse or motor trucks in New York City and vicinity. District Council 16 of the Brotherhood is composed of delegates from various local unions located in New York City and vicinity, including the Local Union 807.

The International Longshoremen's Association is composed of workmen engaged in checking, handling, weighing, loading, and unloading merchandise and coaling vessels, and in operating lighters, tugs, and steamships, in different ports of the United States, and is subdivided into local unions, among which are the following operating in New York City and vicinity: Commercial Checkers' Union, Local 874, engaged in checking merchandise for transportation by water; Local Union 791, consisting of members engaged in general longshore work; Scalesmen's Union Local 935, engaged in weighing merchandise for transportation by water; Local Union 947, engaged in the same business; Steamship Pier Office Employees, Local 1017, engaged in handling merchandise for transportation by water; Local Union 895, engaged in general longshore work; Local Union 856, engaged in the same work.

The District Council of New York and vicinity of the International Longshoremen's Association is composed of delegates from the various local unions located in New York and vicinity.

Finally, the Transportation Trades Council of the Port of New York and vicinity is composed of delegates from all the local unions of the International Brotherhood of Teamsters, Chauffeurs, Stablemen, and Helpers and of the International Longshoremen's Association. Officers or business agents of each one of the foregoing unincorporated associations have been named as parties defendant individually and as representing the respective associations and their members.

The plaintiff's bill and affidavits allege that the Old Dominion Transportation Company and Guillan, induced and coerced by the associations defendant, have refused to receive and transport the plaintiff's goods, in violation of their duty as common carriers, and that they have entered into a combination with the associations defendant in violation of acts of Congress, among others the Sherman Law, to prevent

the handling or transportation of the plaintiff's merchandise, or of any merchandise handled or operated on by nonunion men, or which is offered for transportation by any transfer company or individual teamster not employing union men exclusively.

July 8, 1920, the plaintiff delivered to the Citizens' Trucking Company, Incorporated, which employs both union and nonunion men, a shipment of raw materials to be used in his factory at Norfolk, Va. The Trucking Company brought the goods to the pier of the Transportation Company and tendered them, together with bills of lading for shipment; but the company's checker refused to check them on the ground that the truck was a scab truck and he had been instructed by the delegate of his union not to check them. The defendant Guillan was then called upon, and he tried to get two other checkers to check the goods; but they refused for the same reason. Thereupon the truckmen offered to unload, weigh, and check the goods themselves; but Guillan refused, on the ground that he was unfamiliar with the details and his employees would not attend to them. July 12 the same shipment was again tendered to the Old Dominion Transportation Company and refused for the same reasons.

Exactly the same thing took place with a shipment by the International Cork Company, of Brooklyn, to Suffolk, Va., via Norfolk, the company's checkers refusing to check the freight; one of the checkers telling the defendant Guillan that he would like to check the goods, but if he did so he would be fined $50 by his union. The checker was the defendant John E. Ryan.

There are also submitted by the plaintiff a number of affidavits, made in April and May, 1920, of officers and business agents of the Transportation Trades Council and of various of the local organizations, including Local Unions 807, 874, and 791, in the case of Burgess Co., Inc., v. Frederick Stewart et al., in which these deponents allege that the local unions have voluntarily agreed to follow the advice of the Transportation Trades Council, in pursuance of which they will not handle any nonunion merchandise transported or operated on in any way by any firm, individual, or corporation that refuses to recognize the unions, and this not for the purpose of injuring such persons, but for their own benefit, to establish the policy that all water front business shall be done exclusively by union men.

The affidavit and answer of the defendant Guillan is to the effect that he did not refuse to receive the plaintiff's shipment, but, on the contrary, desired to transport it, ordered the company's dock employees to receive, handle, and check it, which they refused to do, and that neither he nor the Old Dominion Transportation Company has ever combined with the unions to refuse to handle nonunion merchandise or the merchandise delivered by nonunion teamsters.

The answer of the Old Dominion Transportation Company is to the effect that the company was and is willing and anxious to receive and transport the plaintiff's merchandise, but that its employees refused to handle the same because it was brought on a nonunion truck; that if the company had discharged these employees its whole business would have been tied up, to the great injury of the public.

The answer of B. F. Ettenger is that he is chief clerk of the company's office, and has nothing to do with receiving, loading, checking, or weighing freight; that he is not a member of any labor union, and never combined with any one to injure the plair*i*ff's business, or to induce the Old Dominion Transportation Company to refuse to receive or carry his goods.

The answer of the defendant Carney, individually and as president of the United Weighers' Association, Local 974, of the International Longshoremen's Association and its members, denies that he or they have entered into any combination to injure the plaintiff or his business, or have coerced the Transportation Company to refuse to accept and transport the plaintiff's merchandise, referred to in the complaint, in interstate commerce.

The answer of John D. Welch, individually and as president of Local Union 895 of the International Longshoremen's Association and its members, is to the same effect, but admits that the Old Dominion Transportation Company does employ some of its members. The answer of Peter Hussey, individually and as secretary of Local Union 895 of the International Longshoremen's Association and its members, is to the same effect. The answer of John Quinn, as secretary and treasurer of Local Union 874 of the International Longshoremen's Association and its members, is to the same effect.

The affidavits of Martin Lacey, as representative of District Council 16 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen, and Helpers and its members, of John F. Quinn, as representative of Truck Drivers' and Chauffeurs' Local Union 807, and of W. F. Kehoe, representative of the Transportation Trades Council of the Port of New York, are to the effect that neither they individually nor the bodies they represent had any part in the refusal of the Old Dominion Transportation Company to receive the plaintiff's freight as alleged in the complaint.

While it is true that the injunction asked for is of a mandatory nature, rarely granted on affidavits, the question is really one of law, and we believe that it will be to the interest of the public, and with the approval of the parties, with the exception of the Old Dominion Transportation Company, to dispose of the question now.

It will be seen that the representatives of the unions admit the existence of an agreement that their members will not handle the plaintiff's interstate shipments unless he sends them to the Old Dominion Transportation Company by some transfer agency operated entirely by union men, and the Old Dominion Transportation Company admits that it will not transport his shipments until its employees consent to handle them. For this reason it may be regarded as a party to the combination. It is also plain that the plaintiff has sustained, and is sustaining, and will sustain in the future, special and irreparable damage as the result of this combination, for which he has no adequate remedy at law, because of the difficulty of ascertaining the damage in case of each shipment refused and of the necessity of bringing a multiplicity of suits.

The whole case of the defendants and the conclusions of the learned judge of the court below are based upon the law of the state of New York as laid down in Bossert v. Dhuy, 221 N. Y. 342, 117 N. E. 582, Ann. Cas. 1918D, 661, to the effect that a combination of individuals whose primary intent is the protection of their own interests, as, for instance, to establish complete unionization of the longshore work of the water front of the port of New York, not accompanied by violence or intimidation, and not to gratify malice, is lawful, even if it does injure others.

In Duplex Printing Press Co. v. Deering, 252 Fed. 722, 164 C. C. A. 562, we followed this view, and also held that such combinations did not violate the Sherman Law (Comp. St. §§ 8820–8823, 8827–8830). We construed section 20 of the Clayton Act (Comp. St. § 1243) as legalizing a secondary boycott so far as it consists in refusing to deal with any one who deals with an employer whose employees are on strike. But this decision has been lately reversed by the Supreme Court, holding that, if the combination was in violation of an act of Congress, it is of minor consequence whether either kind of boycott (primary or secondary) is lawful or unlawful at common law or under the statutes of particular states; that section 6 of the Clayton Act (section 8835f), providing that labor organizations shall not be held illegal combinations in restraint of trade under the anti-trust laws, contemplates only such organizations as lawfully carry out their legitimate objects; that section 20, prohibiting United States courts and judges from issuing injunctions, applies only to disputes between employers and employees.

The combination in this case being in restraint of interstate commerce, and no controversy between employer and employees being involved, the order is reversed, and the court below directed to issue a preliminary injunction in accordance with this opinion.