## FEHR BAKING CO. v. BAKERS' UNION et al.

### No. 754.

District Court, W. D. Louisiana, Lake Charles Division.

Aug. 23, 1937.

692

John H. Benckenstein and Jack M. Moore, both of Beaumont, Tex., for complainant.

Thos. A. Edwards, of Lake Charles, La., for respondents.

DAWKINS, District Judge.

Plaintiff, a Delaware corporation, alleging that it had qualified to do business in this state, brought this suit against the local bakers' union of Lake Charles, Louisiana, "with Pat Trahan as president," W. R. Mayo as president of "Industrial Union," and A. J. *Light*head and Walter Cole, as individuals, all residents of Louisiana, "their agents, servants, confederates or employees," to restrain interference with its sale and distribution of bread, cakes, and other bakery products in Lake Charles and vicinity. It alleged that it conducts bakeries in Houston and Beaumont, Texas, and that it makes daily deliveries to grocers and others in Lake Charles and surrounding territory; that beginning about the first of July, the defendants had placed pickets in front of the places of business of dealers who handle petitioner's products, carrying placards that said customers of plaintiff were unfair to organized labor, and that said pickets had approached and taken the name of every person who purchased petitioner's products; that on the morning of July 1st, the defendants, their agents and associates, took into their possession the

entire stock of bread of the plaintiff in the city of Lake Charles, and destroyed it; that defendants had obtained, and were attempting to obtain, signatures of grocers and others dealing in such products that they would not handle those of complainant; and that there has been and is no controversy between petitioner and any of its employees or laborers. Further, that the defendants are interfering with and preventing petitioner from engaging in interstate commerce as guaranteed by the Constitution and laws of the United States; and that defendants have destroyed its said business and damaged it in an amount in excess of $3,000.

The prayer was for restraining order, on hearing for a preliminary injunction, and finally for a permanent injunction.

Thereafter, and before any of the defendants appeared, an amended bill was filed wherein the defendants were referred to as "Bakers' Union Local No. 298, Lake Charles, Louisiana, its officers, agents, members and employees, Pat Trahan, Walter Cole and W. R. Mayo, individually, and as President of Lake Charles Labor Council, its officers, agents, members and employees * * *." The amendment further alleged that Trahan and *Leit*head are members and officers of the Bakers' Local Union No. 298, and that otherwise the names of the members of said local union were unknown to petitioner; that on and prior to June 1, 1937, Calcasieu Baking Company, Sanitary Baking Company, Golden Baking Company, North Ryan Baking Company, and Home Town Baking Company, all located in the city of Lake Charles, Louisiana, had combined and conspired with defendants to boycott all Texas bread and to prohibit it from being brought into the city of Lake Charles; and that they had agreed, combined, and conspired with the Bakers' Local Union No. 298 to become 100 per cent. union bakers, and the said union agreed to assist them in prohibiting Texas bread from being brought into the city of Lake Charles for sale; that the said baking companies caused to be printed and circulated among the public in the city of Lake Charles a circular declaring that: "The fight is on between Texas bread and Louisiana bread. It is up to the house-wives to see that Louisiana wins. Buy your bread from the following bakeries, they are 100% union." Then follows the names of the five above-named baking companies of Lake Charles,

and at the bottom there appears, "By Local No. 298," meaning the local bakers' union. Copy of the alleged circular, which bears a replica of the International Bakers' Union insignia, is pasted into the amended petition. The amendment reiterates the charges that defendants had sought to get dealers in Lake Charles to sign an agreement not to handle petitioner's bread, and those who refused were picketed in the manner previously described, with the result that more than 95 per cent. of the grocery stores of Lake Charles had refused to purchase Texas bread; and that petitioner has been assured by such dealers that if they can buy plaintiff's bread without being picketed, they will do so; that on or about June 30, 1937, the defendants Walter Cole, Pat Trahan, and other defendants, called upon the owner of the garage where the bread of petitioner is halted by the interstate trucks to be transferred to local trucks, and protested against permitting the use of his garage by petitioner for the purpose stated, and requested him to prohibit the same in the future, which was refused; that they inquired of said garage owner if he was responsible for said bread until it was distributed, and were informed that he was not, and the said individuals advised that it was well he was not for it might or probably would be destroyed; that on the following morning, or July 1, 1937, at 3:30 o'clock, some 650 pounds of petitioner's bread was destroyed; that the employees of the garage and the police, who made investigations, claimed that they could not find out who destroyed the said bread, and plaintiff charges upon information and belief that the above-named defendants, their agents or associates, committed said acts of depredation.

Further, that the defendants are engaged in an illegal conspiracy to violate the Sherman Anti-Trust Act (15 U.S.C.A. § 1 et seq.) and Clayton Act (38 Stat. 730) by interfering with and destroying petitioner's interstate business. The prayer was substantially as in the original petition.

Defendants W. R. Mayo, A. J. Leithead, Tilden T. (Pat) Trahan, and Athan Coe appeared "on behalf of the Union defendants named herein, in the event the court should hold that they are the legal representatives of said unions, to-wit: Bakery & Confectionery Workers Union, Local No. 298, at Lake Charles, represented by its President A. J. Leithead, W. R. Mayo, as President of Central Labor Union of

Lake Charles, Louisiana, and Athan Coe, as Vice-President of the latter union," and filed the following motions:

I. A plea to the jurisdiction on the grounds: (1) That no interstate commerce is shown; (2) that less than the sum of $3,000 is involved; (3) that the allegation that the conduct of the defendants violates the anti-trust laws is à mere conclusion of law.

For the reasons stated, it was prayed that the bill be dismissed for want of jurisdiction.

II. A motion to dismiss on the following grounds:

(1) The bill of complaint is multifarious, in that (a) it does not state "the proper, true and exact names of the defendants in full"; (b) because the same is replete with statements of evidence; (c) because the "various sections of said bills are confusing and conflicting and are based on information and belief and not on averments of fact on information and belief"; (d) because said bills are replete throughout with mere conclusions of law; (e) that the manner and form of pleading are such that defendants are not able to answer them properly; (f) they invoke the provisions of the Sherman and Clayton Acts on mere conclusions of law, unsupported by allegations of fact.

(2) The bill in effect admits it involves a question under the labor Anti-Injunction Act (29 U.S.C.A. § 101 et seq.).

(3) That it admits the bread had come to rest and was not in interstate commerce.

(4) That the bill is not properly verified. And

(5) The amended bill adds new parties and no service had been made thereof on W. R. Mayo.

The prayer of the motion was for dismissal of both the original and amended bills with damages, for attorney's fees in the sum of $500.

The court having ruled that all pleadings should be filed at one time and that it would take up the questions presented in their proper order for disposition, reserving to respondents the benefits of the exceptions, an answer was filed by "W. R. Mayo, President of Central Labor (Council) Union of Lake Charles, Louisiana, and individually; Athan Coe, as Vice-President of said Labor Union and individually; A. J. Leithead, as President of Bakers & Confectionery Workers' Union, No. 298 of Lake Charles, and individually, and Tilden T. (Pat) Trahan as Secretary of said Bakers & Confectionery Workers' Union, No. 298, and individually," responding specifically to the allegations of complaint. They denied that plaintiff was qualified to do business in the State of Louisiana, or that it was a citizen under the laws of Delaware, or that respondents were members of any of the organizations named in the original bill; they admitted they are affiliated with the American Federation of Labor; denied that the amount involved exceeds $3,000; admitted that the plaintiff is engaged in the bakery business in Houston and Beaumont and sells its products in Lake Charles, but denied that it is engaged in interstate commerce, in so far as the sale of its products in Louisiana is concerned; they denied any connection with the acts of violence of July 1st, in seizing and scattering the bread of complainant, but aver same were due to the plaintiff leaving its bread in a garage unattended, or it believes that the complainant destroyed its own bread, "to form the basis for this action." Further, they admitted that two petitions were circulated "by——" in the month of April, 1937, with the headings reading, "We the undersigned merchants agree to discontinue out of town bread and co-operate with local concerns and union workers," and averred that the same were signed by numerous merchants and dealers "of their own volition and without any reference whatsoever to the complainant herein except to the extent they are a known and recognized chain bakery, along with other out of State concerns doing business in Lake Charles, Louisiana, and said petitions had no special reference to complainant; but were in accordance with the general and public policy of this community in urging the support of local industry and the purchasing of local products from local business men in preference to, out of State concerns." They further denied the charge that no labor dispute was involved, and averred that "the acts of complainant seriously interferes with the contractual relations with their employers, the bakers of Lake Charles, Louisiana"; and that "complainant is an enemy of organized labor."

Otherwise, the remaining allegations of the petition were denied.

In answer to the amended bill, it is averred that the allegations are substantially

the same as in the original, except that names of other persons have been added as defendants, and the response thereto is the same. Repeating the grounds of exception and the motion to dismiss, the charges of conspiracy, etc., were denied; it was admitted that "Tilden T. (Pat) Trahan, Secretary of Local Union No. 298" had "printed and circulated" the circulars complained of "on his own initiative and without the knowledge and consent of respondents" or the bakeries.

The answer further avers as follows:

"(e) That another subject matter therein has already been answered with reference to placing signs in front of four stores in the City of Lake Charles, which respondents aver were stores in three instances in remote sections of the City of Lake Charles, and respondents specially deny said allegations and specially deny that any threats were made and that any and all signatures obtained were done so without threats or intimidations and that all signatures were made as the free and voluntary act of said signers."

"(f) Defendants further specially deny the allegations whereby it is sought to be charged that those merchants refusing to sign the petition were picketed, and specially deny that the carrying of such signs in front of said stores had any reference to complainant, but was directed against said store and not complainant, and therefore respondents specially deny that such acts were illegal or constituted a boycott of complainant and said stores, and further specially deny it interfered with the business of complainant or that anyone was forced to sign any statement to protect their business; that defendants in all things acted within their lawful rights."

They further averred that the plaintiff had violated the sanitary code of the State of Louisiana, by storing its bread in garages and filling stations; and denied any conspiracy or interference with interstate commerce, or that the business of the plaintiff had been damaged.

With respect to the incident of persons calling upon the operator of the garage where the plaintiff's bread was stored, the answer alleges as follows:

"That one of respondents, Tilden T. (Pat) Trahan, Secretary of Local Union No. 298, accompanied by three other persons, to-wit; Earl F. Chamberlain, Sidney C. Schmidt and Melvin Coe, did call upon the said Norman, but that they do not know person by the name of Walter Cole; that they did make inquiry as to the manner in which said bread was being stored at said place, and after being informed that the bread was being stacked there in violation of the Sanitary Code of the State of Louisiana, where it was subject to contamination from oil, gasoline and refuse in said garage, they at no time made any threats or sought to intimidate the said Norman or anyone else, and at no time did they seek to coerce him; that the said Trahan and those accompanying him did not go there under the authority of said Local Union No. 298 of Lake Charles, or any other Union with which they or their associates are connected, and that they were merely a volunteer committee seeking to ascertain the conditions under which said complainant was handling its bread, and that same has been reported to the proper authorities.

"Answering a further subject matter contained in said paragraph VII, defendants deny specially that they had not knowledge of or took any part in any act committed on July 1st, 1937, wherein and whereby complainant alleges that some of its bread was thrown onto the streets of Lake Charles, Louisiana, and therefore respondents specially deny all of said allegations as unfounded and untrue."

That plaintiff is "at dagger's point with the labor union at Beaumont, Texas," and is seeking to bring about the same condition in Lake Charles; they admitted that they had no dispute with the plaintiff "except that plaintiff is recognized as a common enemy of organized labor." The answer then recites at length an interview between the representative of the plaintiff, referred to in the bill of complaint, denies the version of plaintiff, and alleges what defendants contend happened, all of which, in view of what the court considers the pertinent issues herein, it is believed unnecessary to repeat or summarize from either pleading.

Respondents aver that certain other allegations bring the case under the Norris-La Guardia Act (29 U.S.C.A. § 101 et seq.).

Respondents also denied all other allegations of the amended bill and averred that they had been damaged by the restraining order in the sum of $500 attorney's fees

and $100 expenses. They prayed for dismissal of the bills and for damages, as alleged.

Since the hearing, the respondents have filed a motion to amend on behalf of all of the defendants whose names appear in the above answer, in which it is alleged that plaintiff had not complied with the terms and provisions of Act No. 8 of the Third Extraordinary Session of the Legislature of the State of Louisiana, for the year 1935, in that it has failed to allege and supply the court with certificate from the Secretary of State or taxing authorities, "showing it has paid all licenses and taxes, etc., due by said foreign corporation," and for this reason is "barred from filing any suit whatsoever in any court until it complies with that statute." It also prayed for the dismissal of the bills of complaint.

From the foregoing recital of the pleadings, I think it clear that this is not a labor dispute within the meaning of the Norris-La Guardia Act.

## The Plea to the Jurisdiction.

The petition shows diversity of citizenship, charges facts which would appear to be violations of the Anti-Trust laws of the United States, to wit, the Sherman and Clayton Acts, and that the complainant's business is and will be damaged in an amount in excess of $3,000, if the alleged illegal acts of the defendants are permitted to continue, and I believe discloses proper jurisdiction in this court to determine the issues involved. As to the correctness of the names of the persons made defendants, it is true that the original petition was somewhat uncertain as to the identity of the individuals or names of the unions, but the amended bill has supplied the name of the Bakery and Confectionery Workers' Union No. 298, Tilden T. (Pat) Trahan, A. J. Leithead, and Walter Cole; whereas, the answer and other pleadings of respondents give the correct names of these defendants and their relations to the labor organizations of Lake Charles. This, I think, is sufficient to permit the court to dispose of the real issues in the case on application for preliminary injunction, and on the trial of the merits proper amendments can be suggested and made to get all parties by proper names before the court. I also think that the allegations of the complaint, particularly the amended bill, are sufficiently clear to enable respondents to answer.

The plea to the jurisdiction will, therefore, be overruled.

## Motion to Dismiss.

What has just been said as to the plea to the jurisdiction is equally applicable to the motion to dismiss. The bill of complaint sufficiently articulates its allegations to permit respondents to answer, and the charge that Mayo has not been served should properly have been presented by exception to citation, if any was served, and if not, he did not need to appear at all. Having appeared and answered, he has waived this point.

## On the Merits.

On the merits the matter comes to the question of whether under the allegations of the bill, admissions of the answer, and the proofs offered by affidavits on either side, a condition has been shown warranting the issuance of a preliminary injunction.

The following facts, I believe, are substantially established:

Plaintiff is a citizen of the State of Delaware, operating bakeries in Houston and Beaumont, Texas. For some years prior to the matters now complained of, it had been shipping its bakery products, particularly bread, to Lake Charles by truck. At the latter point the merchandise was transferred to local trucks in the early morning hours of each day and delivered to grocers and others for sale in the retail trade. The officers and members of the Bakery and Confectionery Workers' Union, No. 298 and of the Central Labor Trade Council of Lake Charles, had, in conjunction with other persons, including the mayor and others, urged the citizens of Lake Charles to buy from local dealers. Competition between the bread and other bakery products of plaintiff and the local bakers of Lake Charles became very keen, whereupon there were printed and circulated under the name and label of the Bakery & Confectionery Workers' Local Union No. 298, the circulars above referred to, one of which is pasted in the bill of complaint, reciting: "The fight is on between Texas bread and Louisiana bread. It is up to the house-wives to see that Louisiana wins. Buy your bread from the following bakers, they are 100% union: Calcasieu Baking Company, Sanitary Baking Company, Golden Baking Company, North Ryan Baking

Company, Home Town Baking Company. By Local No. 298."

It is proven, as well as admitted in the answer, that petitions were circulated among the business houses by the representatives of the Bakers' Union and Central Trades Council, in Lake Charles, pledging the handling only of merchandise of local concerns; the purpose being, as averred by the respondents, to encourage home industry. It is also admitted in part, and I think proved otherwise, that those grocers and other dealers who refused to sign the agreement to handle only local products, but continued to sell plaintiff's bread, had their places of business picketed as unfair to organized labor; and that some of these merchants signed, not because of local pride or interest in home industry, but through fear of having their own businesses injured by the picketing.

The circumstantial evidence surrounding the destruction of plaintiff's bread is such that I think it fairly preponderates in favor of the conclusion that it was inspired by Tilden T. (Pat) Trahan and his associates who visited the garage where the plaintiff had been placing its bread for transfer to local trucks. It is significant that the garage owner and his employees refused to furnish plaintiff affidavits.

I also think the evidence shows that the activities of the defendants, or some of them at least, has had the effect, until this suit was filed and the restraining order issued, of seriously curtailing the plaintiff's business in Lake Charles and vicinity.

The facts thus found constitute what has been termed a "secondary boycott"; that is against the persons who handle plaintiff's products, rather than against the plaintiff itself, which, however, is just as effective and as subject to restraint in proper cases as if direct. Duplex Printing Press Company v. Deering, 254 U.S. 443, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196. While it is true that when the bread and other products came to rest for the purpose of transfer to local trucks and the latter proceeded to distribute it to the local dealers, it was no longer actually in transit in interstate commerce; but the allegations of the petition and the proof show that the main object of the understanding and activities of the defendants was to prevent the competition with and to exclude the merchandise of complainant from passing in interstate commerce to the trade from Texas to Louisiana, and, therefore, had for its purpose the interference with and stopping of this interstate commerce. See Duplex Printing Press Co. v. Deering, supra; Bedford Cutstone Co. v. Journeyman Stone Cutters Association, 274 U.S. 37, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791; Decorative Stone Company v. Building Trades Council, of Westchester County (D.C.) 18 F.(2d) 333; Apex Hosiery Co. v. Leader (C.C.A.) 90 F.(2d) 155; National Labor Relations Board v. Jones & Laughlin Steel Corporation, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. The court takes cognizance of the fact that in many parts of the country there is a constant urge on the part of local officials and people generally to patronize home industry, and so long as this is done without resort to coercion or other means which tend to restrain the exercise of a free will by the dealer or consumer to make his own choice, there can be no relief at the hands of the courts; but when the choice is not voluntary, but brought about by activities such as are shown in this case, wherein those who handle and distribute the products of citizens of other states are forced to desist, through fear of reprisal, such as picketing and otherwise, driving from such persons business which they would otherwise enjoy, then, in my opinion, such acts fall clearly within what is prohibited by the Sherman and Clayton Acts, and constitute as well an invasion of the property rights of the complainant.

█ The framers of the Federal Constitution foresaw that there would be jealousies between the states and their citizens, which would interfere with free business intercourse among citizens of the whole country, and hence wisely intrusted to the national government the exclusive power to regulate interstate commerce between the several states and with foreign nations. If this were not so, we would doubtless have tariff walls between the states and other conditions similar to those which exist in Europe, particularly the Balkan countries. Under the law, the citizens of different states should be as free to trade with each other as those of different parts of the same state. We are one nation, and anything which tends to create a condition such as that revealed by this case is contrary to the spirit of our organic law.

█ As to the alleged unsanitary conditions at the garage and otherwise under which the plaintiff handles its bread,

698

this is a matter within the police power of the State of Louisiana, and either it or its properly authorized subdivisions, such as the city of Lake Charles, may impose all reasonable requirements to safeguard the health of its citizens. Also, the treatment of its labor or employees by the plaintiff in the operation of its business in Texas is one for settlement there between employer and employee, and not to be controlled by improper interference with interstate commerce.

As to the contention that the Act No. 8 of the Third Extra Session of the Legislature of Louisiana, of 1935, denies to a citizen of another state the right to appeal to the courts until he or it has complied with that statute, no citation of authorities is required to support the conclusion that a state is without power to impose such restrictions upon litigation in a federal court.

My conclusion is that the defendants, their agents and associates, and all other persons acting or co-operating with them in carrying on the boycott of plaintiff's products in the manner hereinabove described, should be enjoined therefrom and until a hearing can be had on the merits.

Proper decree should be presented.