## UNITED STATES v. HEATING, PIPING & AIR CONDITIONING CONTRACTORS ASS'N OF SOUTHERN CALIFORNIA et al.

Nos. 14250–Y, 14262–Y, 14280–Y, 14286–Y.

District Court, S. D. California, Central Division.

July 20, 1940.

Ben Harrison, U. S. Atty., of Los Angeles, Cal., and Tom C. Clark, Alfred C. Ackerson, and James E. Harrington, Sp.

Assts. to the Atty. Gen., for the Government.

Otto J. Emme, John J. Irwin, Joseph K. Horton, and Charles H. Veale, all of Los Angeles, Cal., for Heating, Piping & Air Conditioning Contractors Ass'n of Southern California.

Charles Carr, P. R. Watkins, and Lloyd S. Nix, all of Los Angeles, Cal., John E. Munholland, of Long Beach, Cal., and John L. Rush, Gene Curry, and Dana R. Weller, all of Los Angeles, Cal., Denio, Hart, Taubman & Simpson, Clock, Waestman, & Clock, John Clock, and F. A. Knight, all of Long Beach, Cal., for Contracting Plasterers Ass'n of Long Beach.

Otto J. Emme and John J. Irwin, both of Los Angeles, Cal., for Harbor District Chapter, and Santa Barbara County Chapter, National Electrical Ass'n.

YANKWICH, District Judge.

Before me are the demurrers of various defendants to four indictments charging conspiracy to violate the Sherman Anti-Trust Act, 15 U.S.C.A. § 1.

The questions raised by the different groups of defendants, both at the oral argument and in the briefs filed in support of their demurrers, differ to some extent. The difference is referable to the position occupied by the particular defendants with relation to the trade involved in the combinations charged. It is, however, more apparent than real. For, in the final analysis, the challenge of failure to state an offense runs through them all. And its determination is dependent upon certain definite principles which the courts have evolved for assaying the sufficiency of a criminal complaint which charges violation of the anti-trust statute.

■ The policy behind anti-trust legislation has been declared repeatedly to be the maintenance of freedom in interstate commerce by forbidding monopolistic and other tendencies destructive of it. See Paramount Famous Lasky Corp. v. United States, 1930, 282 U.S. 30, 51 S.Ct. 42, 75 L.Ed. 145; Appalachian Coals, Inc. v. United States, 1933, 288 U.S. 344, 53 S. Ct. 471, 77 L.Ed. 825; Sugar Institute v. United States, 1936, 297 U.S. 553, 56 S.Ct. 629, 80 L.Ed. 859; Paramount Pictures v. United Motion Pictures Co., 3 Cir., 1937, 93 F.2d 714; Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, 458, 60 S.Ct. 618, 84 L.Ed. ——; United States v. Socony-Vacuum Oil Co., 1940, 60 S.Ct. 811, 84 L.Ed. ——.

■ Before a combination or conspiracy can be considered violative of the Anti-Trust Act, it must, by its nature, result in interference with the free flow of commerce, or the means used to achieve it must have that effect. Industrial Association v. United States, 1925, 268 U.S. 64, 45 S.Ct. 403, 69 L.Ed. 849; United States v. Southern California Wholesale Grocers, D. C. Calif., 1925, 7 F.2d 944. Combinations of local character and which affect state products only, no matter how monopolistic, do not violate the act. Hopkins v. United States, 1898, 171 U.S. 578, 19 S.Ct. 40, 43 L.Ed. 290; Whitwell v. Continental Tobacco Co., 8 Cir., 1903, 125 F. 454, 64 L.R.A. 689; United Mine Workers v. Coronado Coal Co., 1922, 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762; Levering & Garrigues Co. v. Morrin, 1933, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Silverstein v. Local No. 280, Journeymen Tailors' Union, 8 Cir., 1923, 284 F. 833; Konecky v. Jewish Press, 8 Cir., 1923, 288 F. 179; United Leather Workers' Union v. Herkert & Meisel Trunk Co., 1924, 265 U.S. 457, 44 S.Ct. 623, 68 L.Ed. 1104, 33 A.L.R. 566; Apex Hosiery Co. v. William Leader et al., 1940. 60 S.Ct. 982, 84 L.Ed. ——; and see my opinion in C. S. Smith Metropolitan Market Co. v. Food & Grocery Bureau, D. C. 1939, 33 F.Supp. 539.

And so, when the object of the combination is to control the price or conditions of sale of articles which never were a part of the flow of interstate commerce, or after they had ceased to be a part of it and come to rest, there is no violation of the statute.

But this does not necessarily mean, as seemed to be intimated at the oral argument and in some of the briefs, that men engaged in purely local activities, such as the various members of the building trades involved here, be they contractors or workmen, can never fall afoul of this law.

■ For local though an activity be, if, through its object, or the means used to attain that object, it interferes directly with interstate commerce, violation exists. See W. W. Montague & Co. v. Lowry, 1904, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608; Ellis v. Inman, Poulsen Co., 9 Cir., 1904, 131 F. 182, 183; Swift & Co. v. United States, 1905, 196 U.S. 375, 25 S.Ct.

276, 49 L.Ed. 518; Steers v. United States, 6 Cir., 1911, 192 F. 1, 4; Patterson v. United States, 6 Cir., 1915, 222 F. 599; Stafford v. Wallace, 1922, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; O'Brien v. United States, 6 Cir., 1923, 290 F. 185; Live Poultry Dealers' Protective Association v. United States, 2 Cir., 1924, 4 F.2d 840; United States v. Brims, 1926, 272 U.S. 549, 47 S.Ct. 169, 71 L.Ed. 403; United States v. Painters' District Council No. 14, D.C., 1930, 44 F.2d 58; Greater New York Live Poultry Chamber of Commerce v. United States, 2 Cir., 1931, 47 F.2d 156; Hicks v. Bekin's Moving & Storage Co., 9 Cir., 1937, 87 F.2d 583.

A study of the reported cases shows a great variety of organizations, of seemingly local import, which have yet been found to be either aimed directly at restraint of commerce, or as using means having that object. Thus: 'Grocers' Associations (United States v. Southern California Wholesale Grocers' Association, D. C.Cal.,1925, 7 F.2d 944); poultry dealers' associations (Live Poultry Dealers' Protective Associations v. United States, 2 Cir., 1924, 4 F.2d 840); lumbermen's associations (Ellis v. Inman, Poulsen Co., 9 Cir., 1904, 131 F. 182).; tile manufacturers' associations (W. W. Montague & Co. v. Lowry, 1904, 193 U.S. 38, 24 S.Ct. 307, 48 L.Ed. 608); bakers' associations (Fehr Baking Co. v. Bakers' Union, D.C. La., 1937, 20 F.Supp. 691).

■ Labor unions may restrain commerce: Loewe v. Lawlor, 1908, 208 U.S. 274, 28 S.Ct. 301, 52 L.Ed. 488, 13 Ann. Cas. 815; Gompers v. Buck Stove & Range Co., 1911, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874; Apex Hosiery Co. v. William Leader et al., 1940, 60 S.Ct. 982, 84 L.Ed. ——; Lake Valley Farm Products v. Milk Wagon D. Union etc., 7 Cir., 1940, 108 F.2d 436.

■ In the light of these principles, the solution of the problem presented by demurrers is not far to seek.

For, if the four indictments under consideration be considered, we find that each of them alleges either that the aim of the combination or conspiracy was to obstruct interstate commerce or that means having that object were used.

Thus, the heating and piping case (No. 14250-Y) charges in count 1, that various contractors and workers, belonging to a labor union, beginning on or about January,

1938, and continuing to the date of the indictment, March 27, 1940, combined and conspired together to restrain unreasonably and did restrain trade and commerce in heating, piping, ventilating and air conditioning among the several states of the United States.

The object sought to be attained by the combination was

"(a) to arbitrarily, unreasonably, and unlawfully increase the costs of heating, piping, ventilating, and air conditioning equipment, *shipped into the State of California in interstate commerce,* for use in Class 'A' construction, in the Southern California area;

"(b) to arbitrarily, unreasonably, and unlawfully regulate, dictate, and control the manner and method of bidding and the performance of contracts awarded for the installing and furnishing of heating, piping, ventilating, and air conditioning equipment and materials, *shipped in interstate commerce for use in Class 'A'* construction in the Southern California area;

"(c) to arbitrarily, unreasonably, and unlawfully suppress and restrain competition among members of defendant association and eliminate and suppress competition by heating, piping, ventilating, and air conditioning contractors not members of the defendant association;

"(d) to arbitrarily, unreasonably, and unlawfully prevent contractors not belonging to the defendant association from purchasing, *in interstate commerce,* heating, piping, ventilating and air conditioning materials, supplies, and equipment." (Italics added.)

It is then charged that, both as a part of the unlawful combination and to achieve its objects, the following means were used:

"(a) Organized defendant association and secured as members thereof virtually all companies in the Southern California area engaged in the business of furnishing and installing heating, piping, and ventilating equipment in Class 'A' construction.

"(b) Established and enforced under penalty, through a bid depository committee, bidding rules and regulations that required all members to file bids, to general contractors or other awarding authority, in a bid depository; to submit bids to general contractors or other awarding authority only upon receipt of written request for bids; to add to the price of bids for the furnishing and installation of heating,

piping, ventilating, and air conditioning equipment an amount arbitrarily fixed and agreed upon.

"(c) Agreed to discriminate against and boycott general contractors or other awarding authorities that accepted bids from or let contracts to non-members of defendant association.

"(d) Refused to participate in bids for or perform work on contracts covering the furnishing and installation of heating, piping, air conditioning and ventilating equipment with anyone other than an association member.

"(e) On or about February 10, 1938, the defendant association entered into an agreement with Local 95 whereby members of Local 95 agreed to work for members of the defendant association only, notwithstanding the willingness of subcontractors, not members of defendant association, to abide by union rules as to wages, hours, working conditions, and collective bargaining. Said agreement remained in full force and effect until the dissolution of Local 95 on or about October 1, 1938, at which time the agreement was ratified and adopted, by the defendant union, and continued in force and effect by the defendant union and the defendant association.

"(f) Prevented subcontractors not belonging to defendant association from employing steam-fitters from defendant union, or its predecessor, Local 95, notwithstanding the willingness of such non-member subcontractors to abide by union rules as to wages, hours, working conditions, and collective bargaining, and subjected to penalties steam-fitters from defendant union working for non-member subcontractors.

"(g) Negotiated with the Sheet Metal Workers Local Union No. 108, and other local labor unions, for an agreement, whereby said unions would supply workers to defendant association members only.

"(h) *Attempted to induce local representatives of out-of state manufacturers of heating, piping, ventilating, and air conditioning equipment to refuse to supply such materials to subcontractors not belonging to the defendant association.*

"(i) *Agreed to boycott local representatives of out-of-state manufacturers of heating, piping, ventilating and air conditioning equipment who sold such equipment to subcontractors not belonging to defendant association."* (Italics added.)

The conspiracy is the gist of the offense. And it is alleged with sufficient particularity. See Patterson v. United States, 6 Cir., 1915, 222 F. 599; Knauer v. United States, 8 Cir., 1916, 237 F. 8. The means for effecting the object of the conspiracy are also given.

Thus, organization of various associations; establishment of restrictive bidding rules; discriminatory practices in boycotting of contractors and other authorities accepting bids or letting contracts to non-members of the association; refusal to participate in bids for or performing work for others than association members; agreement with the labor unions to work for members only; preventing subcontractors from employing other workers; agreement with workers to supply work for them only; inducing local representatives of out-of-state manufacturers of heating, piping, ventilating and air conditioning equipment to refuse to supply materials to subcontractors not belonging to defendant association; boycotting representatives of out-of-state manufacturers of heating, piping, ventilating and air conditioning equipment who sold such equipment to subcontractors not belonging to defendant association.

These allegations, together with the allegation that practically all the equipment is manufactured out of state, show, not only by general averment, interference with interstate commerce, but specifically the methods by which such interference is achieved. They are legally sufficient. See Mercer v. United States, 3 Cir., 1932, 61 F.2d 97.

In the second count of two of the indictments—14250–Y and 14262–Y—a conspiracy to monopolize is charged and the means of achieving that object are substantially the same as those given in the first count.

These allegations are typical of all the others, contained in the other indictments. In each of them, we are dealing with a product originating partly or wholly without the state. In each of them, we have a combination of contractors and workers seeking, by agreements among themselves and with each other, *to prevent the free flow of a product into the state* by prescribing the conditions under which the

material could be worked and by boycotting non-consenting contractors and the representatives of out-of-state manufacturers, and thus curtailing its sale and its free flow into the state.

So that, by and large, there is little room for complaint that the defendants are not informed of the acts with which they are charged. See Mark Yick Hee v. United States, 2 Cir., 1915, 223 F. 732, 734. It cannot be contended that in a case of this character, it is necessary that each individual defendant be charged specifically with the part he takes, either in the combination or in the means for achieving its ends.

Nor can I follow the defendants in their contention that the allegations are mere conclusions. Mercer v. United States, 3 Cir., 1932, 61 F.2d 97.

Even in civil actions seeking recovery under the penal provisions of the anti-trust statutes, in which the rules of pleading are more strict than in criminal cases, allegations of object in practically the form contained here have been sustained. Mitchell Woodbury Corp. v. Albert Pick Barth Co., 1 Cir., 1930, 41 F.2d 148, 150; Ballard Oil Terminal Corp. v. Mexican Petroleum Corp., 1 Cir., 1928, 28 F.2d 91, 98; Buyer v. Guillan, 2 Cir., 1921, 271 F. 65, 16 A.L.R. 216; Hicks v. Bekin's Moving & Storage Co., 9 Cir., 1937, 87 F.2d 583, 586; Lynch v. Magnavox Co., 9 Cir., 1938, 94 F.2d 883. And see, Steers v. United States, 1911, 6 Cir., 192 F. 1, 4.

The demurrers are overruled.

Exception to the defendants.