UNITED STATES v. STANDARD OIL CO. OF NEW JERSEY et al.

(Circuit Court, E. D. Missouri, E. D. • March 7, 1907.)

No. 5,371.

1. MONOPOLIES—ACT TO PROHIBIT CONSPIRACIES IN RESTRAINT OF TRADE—FEDERAL COURTS—CONGRESSIONAL POWER TO AUTHORIZE THEIR PROCESS TO RUN OUTSIDE THEIR DISTRICT.

In a case at law or in equity which arises under the Constitution or laws of the United States—and a suit by the United States under Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], "to protect trade and commerce against unlawful restraints and monopolies" presents such a case—Congress is authorized by article 3, §§ 1, 2, of the Constitution, to confer upon any national court jurisdiction to summon the proper parties to the suit to a hearing and decree, wherever they reside or are found within the dominion of the nation, although beyond the limits of the district of the court.

2. COURTS—FEDERAL COURTS—DISTRICT WHERE SUIT TO BE BROUGHT—RESTRICTION TO INHABITANTS OF DISTRICT INAPPLICABLE WHERE JURISDICTION CONFERRED BY SPECIAL ACTS.

The inhibition of section 1 of the judiciary acts of 1887 and 1888 (Act March 3, 1887, c. 373, 24 Stat. 552, and Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), that "no suit shall be brought before either of said courts [the Circuit and District Courts] against any person by any original process or proceeding in any other district than that whereof he is an inhabitant," is ineffective and inapplicable in instances in which exclusive jurisdiction over particular cases or classes of cases has been conferred upon the federal courts by special acts of Congress.

3. MONOPOLIES—INJUNCTION—JURISDICTION TO BRING IN NONRESIDENT DEFENDANTS CONFERRED BY ACT JULY 2, 1890.

Act July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], "to protect trade and commerce against unlawful restraints and monopolies," by section 5 (26 Stat. 210 [U. S. Comp. St. 1901, p. 3201]) confers upon any court of the United States, in which a suit has been brought under it by the United States against a conspirator that is a resident of its district, jurisdiction to bring in nonresident co-conspirators by the service of its process upon them without its district.

4. SAME—ENDS OF JUSTICE REQUIRE NECESSARY PARTIES TO BE BROUGHT IN.

The ends of justice require, within the true meaning of Act July 2, 1890, c. 647, § 5, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3201], that every necessary party within reach of the process of the court, every party who has an interest in the controversy and who ought to be made a party to the suit in order that the court may finally adjudicate the whole matter, should be brought in.

5. SAME—PRACTICE UNDER SECTION 5.

The approved practice under Act July 2, 1890, c. 647, § 5, 26 Stat. 210 [U. S. Comp. St. 1901, p. 3201], is to make all the conspirators, both resident and nonresident, parties defendant to the bill, to set forth therein the existence and history of the conspiracy and the connection of each defendant therewith, and immediately upon its filing to present a petition to the court in which the places where the nonresident defendants can be served with process are disclosed, and to pray therein that they be summoned. An order granting such a petition before service of process upon the resident conspirator and without notice to the nonresident conspirators is neither premature nor irregular.

6. SAME—CONSPIRACY IN RESTRAINT OF TRADE—PARTIES.

Act Cong. July 2, 1890, c. 647, 26 Stat. 209 [U. S. Comp. St. 1901, p. 3200], prohibits conspiracies in restraint of trade, and section 4 confers on the several federal Circuit Courts jurisdiction to restrain violations of its

provisions; section 5 providing that, whenever it shall appear to the court before which any proceeding under section 4 is pending that the ends of justice require that other parties should be brought in, the court may cause them to be summoned, whether they reside in the district in which the court is held or not. A bill alleged that the Standard Oil Company of New Jersey, a holding corporation, and 7 individual defendants, and about 70 other defendants, called "subsidiary corporations," had formed and were executing a conspiracy to restrain and monopolize commerce in petroleum and its products among the states and territories and with foreign nations; that, pursuant thereto, the individual defendants had caused the control of all the subsidiary corporations and the ownership of a majority of the stock of many of them to be vested in the Standard Oil Company of New Jersey, while the subsidiary corporations were the producers, refiners, traders, and operators, by means of which the restraint and monopoly was effected and the profits obtained; that the individual defendants owned a majority of the stock of and controlled the holding corporation, and through it the subsidiary corporations; that two of the subsidiary corporations, one a corporation of Missouri within the district, in combination with the other defendants, controlled and monopolized the railroad lubricating oil business of the United States; that the defendants had divided the territory of the United States into districts so that certain defendants only were permitted to sell therein; and that the Missouri corporation was a party to this conspiracy. *Held*, that the ends of justice required that all of the defendants, regardless of their residence, be made parties to such proceeding, though they were not necessary parties to a decree merely restraining the Missouri corporation from further continuing its wrongful acts.

On Motions to Vacate Order to Bring in Nonresident Defendants and to Quash the Service upon Them of Subpœnas.

John G. Johnson, John G. Milburn, W. I. Lewis, W. J. McKie, H. S. Priest, George G. Greer, and Motter, MacKenzie & Weadock, for the motions.

Frank B. Kellogg (The Attorney General, The Assistant Attorney General, Milton D. Purdy, C. B. Morrison, and C. A. Severance, on the brief), opposed.

Before SANBORN, VAN DEVANTER, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. The United States exhibited its bill in this court under the act of July 2, 1890, "to protect trade and commerce against unlawful restraints and monopolies" (26 Stat. 209, c. 647 [U. S. Comp. St. 1901, p. 3200]), in which it alleged the existence of this state of facts: The Standard Oil Company of New Jersey, a corporation, 7 individual defendants, and about 70 other defendants, called "subsidiary corporations," have formed and are engaged in executing a conspiracy to restrain and monopolize commerce in petroleum and its products among the states and territories and with foreign nations. Pursuant to, and in the execution of, the plan of this conspiracy, the individual defendants have caused the control of all the subsidiary corporations and the ownership of a majority of the stock of many of them to be vested in the Standard Oil Company of New Jersey, a holding corporation, while the subsidiary corporations are the producers, refiners, traders, and operators, by means of which the restraint and monopoly are intended to be and are effected, and the profits of the scheme are gathered. The individual defendants own a majority of the stock of

and control the holding corporation, and, through it, the subsidiary corporations. Two of these subsidiary corporations, the Waters-Pierce Oil Company, a corporation of the state of Missouri, whose principal place of business is in this district, and the Galena Signal Oil Company, in combination with the other defendants, restrain commerce throughout the United States in the lubricating oil used by railroad companies, whose value aggregates about $4,300,000 per annum, so that they control more than 90 per cent. thereof, and thus practically monopolize it. The defendants have divided the territory of the United States into districts, so that certain defendants only are permitted to sell the products of petroleum in specified districts, and all other defendants are restrained by the control of the holding company or by understandings or agreements from effecting sales in these districts. Such an understanding and agreement has been made, and is being carried out, between the Waters-Pierce Oil Company and the defendant the Standard Oil Company of Indiana, whereby the territory in the state of Missouri and other southwestern territory is divided between them, and neither corporation is permitted to market the products of petroleum in the district of the other. The defendants have conspired for the purpose of, and are engaged in, restraining and monopolizing commerce in the products of petroleum throughout the United States by these and other similar means, and the complainant prayed in its bill that they might be enjoined from continuing this restraint, and from maintaining this monopoly, and for other equitable relief.

Section 4 of the act of July 2, 1890, confers upon the several Circuit Courts of the United States jurisdiction to restrain violations of its provisions, and section 5 reads in this way:

"Whenever it shall appear to the court before which any proceeding under section four of this act may be pending that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned, whether they reside in the district in which the court is held or not; and subpoenas to that end may be served in any district by the marshal thereof."

The individual defendants, the Standard Oil Company of New Jersey, and nearly all the subsidiary corporations, except the Waters-Pierce Oil Company, were not inhabitants of, and could not be found in, this district. After the filing of the bill, and upon the presentation by the complainant of a petition which disclosed this fact, the court ordered that the nonresident defendants should be brought in, and that subpoenas should be served upon them in the districts in which they resided. Certain of these defendants have appeared specially, and moved the court to vacate this order and to quash the service of the subpoenas upon them, upon the grounds that the court was without jurisdiction to make the order, that it was prematurely and irregularly made, and that the ends of justice did not require that the nonresident defendants should be brought into this suit.

The judicial power of the United States is vested by the Constitution in the Supreme Court, "and in such inferior courts as the Congress may from time to time ordain and establish." This power extends "to all cases in law and equity arising under this Constitution and the laws of the United States,—to controversies to which the United States shall be

a party," and to other cases not material to the issues here presented. Article 3, §§ 1, 2. This is a case in equity arising under a law of the United States. The United States is a party to the controversy which it involves; and the Congress had ample authority, under these provisions of the Constitution, to confer upon this or upon any inferior court of the nation jurisdiction of this suit and power to summon the proper parties to it, wherever residing or found within the dominion of the nation, to a hearing and decree herein. U. S. v. Union Pac. R. Co., 98 U. S. 569, 604, 25 L. Ed. 143. As the Congress had the authority to enact that in this, and other cases of this class, any Circuit Court in which the United States might bring its suit might, by process served anywhere in the United States, lawfully bring into it all the parties necessary to the adjudication of the controversies it involved, they had authority to empower such a court to bring in these parties whenever in its opinion the ends of justice should require such action, because the whole is greater than any of its parts and includes them all.

The inhibition of section 1 of the judiciary acts of March 3, 1887, c. 373, 24 Stat. 552, and Aug. 13, 1888, c. 866, § 1, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508], that "no civil suit shall be brought before either of said courts [the Circuit and District Courts] against any person by any original process or proceeding in any other district than that whereof he is an inhabitant," does not restrict the jurisdiction of this court, nor its power to bring in parties without its district, in the case under consideration, because that provision is inapplicable to instances in which exclusive jurisdiction over particular cases, or classes of cases, is created and conferred upon the courts of the United States by special acts of Congress. U. S. v. Mooney, 116 U. S. 106, 6 Sup. Ct. 304, 29 L. Ed. 550; Van Patten v. Chicago, Milwaukee & St. Paul R. Co. (C. C.) 74 Fed. 981, 985–988; Atkins v. Disintegrating Co., 18 Wall. 272, 21 L. Ed. 841; In re Louisville Underwriters, 134 U. S. 488, 493, 10 Sup. Ct. 587, 33 L. Ed. 991; In re Hohorst, 150 U. S. 653, 662, 14 Sup. Ct. 221, 37 L. Ed. 1211. There can therefore be no doubt that Congress had the authority to confer jurisdiction of this case upon this court, nor that they have lawfully exercised that authority; and the only question is whether or not this court exceeded the power thus conferred upon it when it summoned the nonresident defendants.

Counsel call attention to the fact that the complainant alleges in its bill that the seven individual defendants conceived and put into operation the plan whereby the Standard Oil Company of New Jersey, with a capital of $113,000,000, became the holding company, and whereby, through it, they direct and control the acts of the subsidiary corporations, and they contend that, if a Circuit Court, within whose district one of these eight principal defendants is a resident, would have the power in a suit of this nature to bring in nonresident parties necessary to a complete adjudication of the case, nevertheless, the subsidiary corporations are mere tools of the principal defendants, and the act was not intended to grant, and does not give, to a court within whose district a subsidiary corporation only resides, the power to summon the other conspirators who are not residents of that district. They argue that it is only where there is a resident defendant who is a participant in the whole length and breadth of the conspiracy that nonresident

conspirators may be lawfully subpœnaed; that the Waters-Pierce Oil Company, the resident defendant, has a capital of only $410,000, is but a puppet of the principal conspirators, is alleged to be effecting a mere local and limited restraint of trade, and is not made to appear to be taking any part in the main conspiracy. And they insist that, on account of its limited power and efficacy, this court is without jurisdiction to bring in the principal defendants or any defendants who would not be indispensable parties to a suit to enjoin the specific restraint which the resident defendant is engaged in effecting.

Repeated readings of the act under which this bill is brought disclose no such limitation or condition of the authority granted to the Circuit Courts to bring in nonresident parties. The power is given without restriction to every Circuit Court whenever it appears to it that the ends of justice require its exercise. The Congress has unlimited discretion here. It might have conditioned this authority by the rank, by the power, or by the degree of participation in the conspiracy of the resident defendant. The fact that it failed to do so raises a persuasive presumption that it never intended to impose any condition or limitation of this nature.

Again, the alleged conspiracy is one. Its scheme is single. It has but one object. Perhaps none of the alleged conspirators participates in every part of the conception and of the work of the combination, but every one of them takes his part in the plan or in its execution, a part promotive of its purpose, the restraint and monopolization of commerce in the products of petroleum among the states. To the Waters-Pierce Oil Company, the resident defendant, has been allotted no inconsiderable portion of the execution of this plan. Its part is, with the aid of the Galena Signal Oil Company, to restrain and monopolize the commerce throughout the United States in the lubricating oil used by railroad companies, and, with the aid of the Standard Oil Company of Indiana, to divide between them the territory in Missouri and the Southwest, and to restrain and monopolize the commerce in the products of petroleum in their respective districts. It has accepted its assignment and is engaged in the performance of this portion of the scheme of the conspiracy. It has been engaged in executing some part of its plan for many years. It is true that a majority of its stock is owned by the eight principal defendants, that they choose its officers, control its operation, and share its profits; but the Waters-Pierce Oil Company is still a distinct legal entity, a corporation of the state of Missouri. The knowledge of its officers and directors is its knowledge, and those officers and directors cannot have caused this corporation to act its important part in the accomplishment of the purpose of this conspiracy without knowledge of the conspiracy, its scheme, its object, and its effect. One who learns of a conspiracy after it is formed, and then joins it, or knowingly aids in the execution of its scheme, and shares in its profits, becomes from that time as much a co-conspirator as if he were one of those who originally designed it and put it in operation. Lincoln v. Claflin, 7 Wall. 132, 138, 19 L. Ed. 106; United States v. Babcock, Fed. Cas. No. 14,487; United States v. Cassidy (D. C.) 67 Fed. 698, 702; The Anarchists' Case, 12 N. E. 865, 976, 17 N. E. 898, 122 Ill. 1, 3 Am. St. Rep. 320; United

States v. Johnson (C. C.) 26 Fed. 682, 684. "If a series of acts are to be performed with a view to produce a particular result, he who aids in the performance of any one of these acts, in order to bring about the result, must have the intention to effectuate the end proposed, and if he operates with others, knowing them to have the same design, there is in fact an agreement between him and them. His criminal intent is not to be distinguished from the intent of those who first formed the plans of the conspiracy." People v. Mather, 4 Wend. (N. Y.) 230, 260, 21 Am. Dec. 122. The Waters-Pierce Oil Company, the resident defendant, was therefore a conscious and active party to the entire conspiracy, and the act of July 2, 1890, conferred ample power upon this court to bring in its nonresident co-conspirators whenever it was made to appear to it that the ends of justice required their presence.

Was the order irregular or premature? Immediately after the filing of the bill, and before a subpœna had been issued or served upon the resident defendant, the United States presented its petition that the nonresident defendants should be brought in, and it was granted. It is insisted that the order was premature, and that the court was without power to make it, until after the resident defendant had been served with process, and notice of the hearing upon the petition had been given to the defendants without the district. But the statute requires no notice of the application for the order, and there is no reason for it, because the order conclusively adjudicates nothing, and every question which conditions its validity or propriety is open to challenge, hearing, and decision as completely after, as before it was made, as in the case now under consideration. The act does not prescribe the time or the manner in which it shall be made to appear to the court that other parties should be brought before it, and, in the absence of any provision of this nature, the requisite appearance may be made at such a time and in such a way as the court, in the exercise of a sound judicial discretion, may direct or permit. The method suggested by counsel for the defendants is that the United States should first file its bill against the resident conspirators, and cause service of process to be made upon them, and that thereafter it should present a petition that the nonresident conspirators should be brought in and made parties to the suit. The method pursued was to make all the alleged conspirators defendants to the bill, to set forth therein the existence and history of the conspiracy and the connection of each defendant therewith, and immediately upon its filing to present a petition, in which the places where the nonresident defendants could be served with process were disclosed, and to pray therein that they be summoned. In the prosecution of each method, the question whether the nonresident conspirators are necessary or proper parties to the suit between the government and the resident conspirators equally conditions the duty of the court to bring them before it. In the prosecution of each method, that question may be well determined. No sound reason occurs to us why the former is preferable to the latter. On the other hand, the presentation of its entire cause of action in the original bill, in which all the alleged conspirators are named as defendants, and wherein their connection with the conspiracy is set forth, accom-

panied by a petition which discloses the places where nonresident defendants may be served, is the more concise, logical, and satisfactory manner of presenting the issue whether or not the conspirators without the district should be brought into the suit, and the presentation of this question in this way and the order in this case were neither irregular nor premature.

Finally, it is insisted that it did not appear to the court that the ends of justice required the nonresident defendants to be brought before it, because more of them and more of the original and chief conspirators resided in the Southern district of New York and in certain other districts than in the district in which this court sits, and it is contended that the ends of justice will be more completely served by the prosecution and adjudication of the controversy involved in this suit in the district of the inhabitancy of a larger number of the defendants. But that question is not open to the consideration or adjudication of this court. The Congress did not confer jurisdiction, in this class of cases, upon the Circuit Court in whose district the largest number of conspirators resided, but upon every Circuit Court in whose district a resident conspirator could be found and served with process. It did not grant to any of the Circuit Courts the power to select the court in which the United States should institute its suit. If it had done so, each court might have selected another. It left the complainant free to commence its suit in any Circuit Court in which it could find and serve a resident conspirator. It instituted its suit in this court and invoked its exercise of its power to acquire jurisdiction of the defendants by the issue and service of its process. The question presented by the petition for that purpose was, not in which court the ends of justice required the complainant to choose to institute its suit, but whether or not in this suit the ends of justice required that the nonresident defendants should be brought in.

The exercise of the power conferred upon the courts by the Constitution and the acts of Congress, to acquire jurisdiction of controversies and parties by the issue and service of their process, is not discretionary with the courts, when a complainant demands it. It is an imperative duty, which may not be renounced, and whose discharge may not be evaded. It is the duty of a court of equity to finally determine the entire controversy before it, and to do complete justice by adjusting all the rights involved therein. Hence, in every suit in which the power to acquire jurisdiction of the subject-matter and of the parties is conferred upon the court, the duty is imposed upon it, if its discharge is invoked by the complainant, to summon and hear, before decision, not only every indispensable party, but every necessary party within reach of its process, every party who has an interest in the controversy, and who ought to be made a party to the suit in order that the court may finally adjudicate the whole matter, although if he were not amenable to process, final justice might be administered between the other parties without his presence. Story's Eq. Pl.; Shields v. Barrow, 17 How. 130, 15 L. Ed. 158; Minnesota v. Northern Securities Co., 184 U. S. 199, 235, 22 Sup. Ct. 308, 46 L. Ed. 499.

The scope of the bill in this case is broad and comprehensive. It portrays an alleged conspiracy which extends throughout the nation.

Nothing less than a permanent injunction against the continuance of the operation of this conspiracy and the maintenance of the restraint and monopoly it effects will give adequate relief for the violation of the act of Congress averred in the bill. An injunction against the continuance of the acts of the Waters-Pierce Oil Company and of a few subsidiary corporations would be futile, because the remaining conspirators could assign the parts in the scheme of the conspirators enjoined to others, and continue the restraint. Even in the granting of the latter relief, however, the nonresident defendants are materially interested, because they are co-conspirators with the Waters-Pierce Company, and share in the benefit and profits derived from its operations. The ends of justice therefore required that the nonresident defendants should be brought into this suit, because the complainant was entitled to complete relief from the alleged violation of the statute disclosed by the bill, and the nonresident defendants were materially interested in the controversy involved and in the relief sought.

Our conclusions are these: Congress had the power, under the Constitution, to confer jurisdiction of suits of this nature upon this court, and to authorize it to bring into a suit against a resident conspirator nonresident co-conspirators by service of its process upon them anywhere within the dominion of the United States. It exercised this power by the act of July 2, 1890. The Waters-Pierce Oil Company was a resident of this district and a co-conspirator with the nonresident defendants. The fifth section of the act granted authority to bring in the nonresident co-conspirators by service of its subpœnas upon them without this district. The ends of justice required the court to bring them in. The proceedings for that purpose were regular, and the order was timely, and the motions to vacate it and to quash the service of the subpœnas issued under it must be denied.

Let an order be entered accordingly.