## UNITED STATES v. NATIONAL CITY LINES, Inc., et al.

### Civil Action No. 6747.

District Court, S. D. California, Central Division.

Sept. 29, 1947.

Tom C. Clark, Atty. Gen. of the United States, John F. Sonnett, Asst. Atty. Gen., William C. Dixon and James E. Kilday, Sp. Assts. to Atty. Gen., Jesse R. O'Malley, Sp. Atty., of Cincinnati, Ohio, Leonard M. Bessman, Sp. Atty., of Milwaukee, Wis., and James M. Carter, U. S. Atty., of Los Angeles, Cal., for the Government.

Hodges, Reavis, Pantaleoni & Downey, of New York City, and O'Melveny & Myers, Louis W. Myers, Pierce Works, and Jackson W. Chance, all of Los Angeles, Cal., for National City Lines, Inc., and others.

Joseph Thomas, of Akron, Ohio, and Haight, Trippet & Syvertson, Oscar A. Trippet, and Frank B. Yoakum, Sr., all of Los Angeles, Cal., for Firestone Tire & Rubber Co.

Cosgrove, Clayton, Cramer & Diether, T. B. Cosgrove, and Leonard A. Diether, all of Los Angeles, Cal., for General Motors Corporation.

Finlayson, Bennett & Morrow and H. T. Morrow, all of Los Angeles, Cal., for Phillips Petroleum Co.

Wright & Millikan and Charles E. Millikan, all of Los Angeles, Cal., for Mack Mfg. Corporation.

Lawler, Felix & Hall and John M. Hall, all of Los Angeles, Cal., for Standard Oil Co. of Cal. and another.

YANKWICH, District Judge.

## I.

### The Nature of the Proceedings.

On August 14, 1947,[1] in United States v. National City Lines, et al., I transferred to the Northern District of Illinois, Eastern Division, a criminal anti-trust prosecution instituted against the nine corporate defendants involved in this suit and seven individuals. The ruling was made under the provision for change of venue contained in the Federal Rules of Criminal Procedure.[2]

In the present suit, I am asked to dismiss a Complaint in equity instituted by the Government under Section 4 of the Sherman Anti-Trust Act.[3] The factual background of the two cases is the same.

The States of organization of the defendants are as follows: National City Lines, Inc., Delaware; American City Lines, Inc., Delaware; Pacific City Lines, Inc., Delaware; Standard Oil Company of California, Delaware; Federal Engineering Corporation, California; Phillips Petroleum Company, Delaware; General Motors Corporation, Delaware; Firestone Tire & Rubber Company, Ohio; Mack Manufacturing Corporation, Delaware.

The Government claims that all the defendants except Phillips do business in the district or are to be found in it. However, the affidavits on file show conclusively that only three of the defendants do business or are found in the district,-Standard, General Motors and Firestone. The chief defendants, *through whom control is exercised*— National and American—have always had their main offices in Chicago, Illinois, where all their records are kept.

In substance, the Government charges that National and its subsidiaries, American and Pacific, own and control, or have a substantial financial interest in corporations which are referred to as "operating companies", and which are engaged in providing local transportation service in more than forty-two cities in sixteen States.

The operating companies of the defendants National, American and Pacific use large quantities of busses, tires, tubes, and petroleum products, which are manufactured and handled by the supplier defendants, such as Phillips, Standard, General Motors, Mack and Firestone. The Government charges that, beginning on or about January 1, 1937, and continuing to the filing of the Complaint on April 10, 1947, the defendants have engaged in an unlawful combination and conspiracy to acquire ownership, control or a substantial financial interest in a substantial part of local transit companies in various cities, towns and counties in various States of the United States and "to restrain and to monopolize the aforesaid interstate commerce in motor busses, petroleum products, tires and tubes sold to local transportation companies in cities, counties and towns in which National, American and Pacific have, or have acquired, or in the future acquire, ownership, control or a substantial financial interest in said local transportation companies, all in violation of Sections 1 and 2 of the Sherman Anti Trust Act [15 U.S.C. A. §§ 1, 2]. Defendants threaten to and will continue to violate Sections 1 and 2 of the Sherman Anti Trust Act unless the relief hereinafter prayed for is granted."

The means of achieving this result are stated to be these: "Supplier" defendants have furnished money and capital to National, American and Pacific who have, in turn, caused their operating companies to purchase practically all their require-

---

[1] United States v. National City Lines et al., 1947, D.C.Cal., 7 F.R.D. 393.

[2] Rule 21(b), Federal Rules of Criminal Procedure, 28 U.S.C.A. following section 723c.

[3] 15 U.S.C.A. § 4.

ments in tires, tubes, petroleum products and busses from the supplier defendants to the exclusion of products competitive with them. Money made available by the "supplier" defendants was used to acquire control of local transit companies through the operating companies. National, American and Pacific would not renew contracts with others for the purchase or rental of materials and equipment without the consent of the supplier defendants. When an operating company was sold, National, American and Pacific would require the new owner to assume the burden of the contracts for the exclusive purchase of equipment and supplies. No change of type of equipment or conversion to another type would take place without the consent of the supplier defendants. The business of dealing in such supplies and equipment would be allocated to the supplier defendants in an artificial, arbitrary and uncompetitive manner. Between January 1, 1939, and the date of the filing of the Complaint, the amounts of stock purchased by the supplier defendants in National, American and Pacific were as follows:

| Name of Supplier Defendant | Amount Paid for Stock Purchased |
|---|---|
| Standard Oil Company of Calif. | |
| Federal Engineering Corporation | $2,074,310.57 |
| General Motors Corporation | $3,190,802.32 |
| Phillips Petroleum Company | $1,574,064.82 |
| Firestone Tire & Rubber Company | $1,383,403.41 |
| Mack Manufacturing Corporation | $1,200,071.43 |

The effect of the combination and conspiracy, the Complaint avers, is to eliminate competition from other suppliers in the sale of supplies and equipment to National, American and Pacific and their operating companies, and to restrain interstate commerce in such equipment substantially and unreasonably, so far as the transportation companies controlled by National, American and Pacific are concerned, to charge non-competitive prices for such equipment and to allocate the nation-wide markets of the defendants National, American and Pacific and their operating companies for supplies and equipment between the various supplier defendants. To end these practices, the Government seeks a decree declaring that the defendants are engaged in a conspiracy in violation of the Sherman Act, that the supplier defendants be required to divest themselves of stock and other interests in the traction companies, that contracts between the parties be declared void, and that the traction and operating companies be enjoined from acquiring their equipment from the suppliers. In addition to this, the following more specific prayers are included which are set forth in full because of their significance in the discussion to follow:

"5. That the defendants National, American and Pacific be ordered to make such disposition of their interests and holdings in local transportation companies as is necessary to restore competition and to dissipate the effects of the unlawful conspiracy; and that defendants National, American and Pacific be permanently enjoined from acquiring, directly or indirectly, any financial interest in any local transportation system operating in any city, town or county of any State of the United States without first obtaining the approval and authority of this Court;

"6. That the defendants herein and each of them and their officers, directors and representatives and all persons and corporations acting or claiming to act on behalf of them be perpetually enjoined and restrained from combining and conspiring to monopolize or to restrain interstate trade and commerce of the United States in the manner and by the means described herein, and be perpetually enjoined from engaging in or participating in agreements, understandings, practices or arrangements having a tendency to revive or continue any of the aforesaid violations of the Sherman Anti Trust Act."

The defendants have moved to dismiss the Complaint upon the ground of inap-

propriate forum. Their motions bring into play the doctrine of forum non conveniens.

## II.

### The Doctrine of Forum Non Conveniens.

[1, 2] The doctrine of forum non conveniens is not of statutory origin. In Anglo-American law, it has been used as a means of declining jurisdiction whenever "considerations of convenience, efficiency, and justice" [4] point to another tribunal than that chosen by a litigant as the appropriate tribunal. And courts of equity will "go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." [5]

This doctrine which permits a court having jurisdiction to refuse to exercise it has been applied either under its Latin name, forum non conveniens, or under its truncated English name, inappropriate forum, in many cases arising in Admiralty[6] and in Equity.[7]

The problem before us must be solved in the light of the principles which have governed its application.

In each instance, the Court which declined to exercise jurisdiction had jurisdiction, and the plaintiff had a choice of venue. Thus, when, under a statute, jurisdiction in a proceeding to limit liability could be brought in either the state court or the federal court, the federal court, in its discretion, could enjoin the prosecution of the action in the state court.[8] And when a stockholders' suit relating to the affairs of a corporation could properly be brought in either the state or the federal courts, it was held the federal district court could, in its discretion, dismiss the suit.[9]

The more recent cases of the Supreme Court applying this doctrine must be interpreted in the light of these principles.[10] Indeed, the nub of the controversy between the parties here is as to the meaning of these cases, and especially the Gulf and Koster cases.[11]

It is the Government's contention that these cases lay down a distinction between general venue and special venue statutes and that the doctrine of forum non conveniens does not apply to cases in which the Congress, *by a special venue statute,* has given to the plaintiff the choice of forums.

None of these cases define the difference between the two types of venue statutes.

■ It is evident, however, that a general venue statute would be exemplified by the provisions of the Judicial Code to the effect that actions shall generally be brought against a person only in the district of which he is a resident, or, in diversity cases, in the district of the residence of either the plaintiff or the defendant.[12] The mere existence of a choice of forums does not, as the cases already cited [13] indicate, make a statute one of a

---

[4] Rogers v. Guaranty Trust Co., 1933, 288 U.S. 123, 131, 53 S.Ct. 295, 298, 77 L.Ed. 652, 89 A.L.R. 720.

[5] Virginian Ry. v. System Federation, 1937, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789.

[6] Langnes v. Green, 1931, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520; Canada Malting Co. v. Paterson Co., 1932, 285 U.S. 413, 52 S.Ct. 413, 76 L.Ed. 837.

[7] Kansas City Southern R. Co. v. United States, 1931, 282 U.S. 760, 763, 51 S.Ct. 304, 75 L.Ed. 684; Rogers v. Guaranty Trust Co., 1932, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720; Virginian Ry. v. System Federation, 1937, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Commonwealth of Massachusetts v. State of Missouri, 1939, 308 U.S. 1, 19, 60 S.Ct. 39, 84 L.Ed. 3.

[8] Langnes v. Green, 1931, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520.

[9] Rogers v. Guaranty Trust Co., 1932, 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720.

[10] Williams v. Green Bay & W. R. Ry. Co., 1946, 326 U.S. 549, 66 S.Ct. 284, 90 L.Ed. 311; Gulf Oil Corporation v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839; Koster v. Lumbermen's Mutual Co., 1947, 330 U.S. 518, 519, 67 S.Ct. 828.

[11] See cases in Notes 7 and 8.

[12] 28 U.S.C.A. § 112.

[13] See cases in Notes 7 and 8. And see, Neirbro Co. v. Bethlehem Shipbuilding Corporation, 1939, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437.

special venue. Special venue statutes are statutes in which the Congress has legislated with reference to a particular kind of actions and has decreed that they might be brought in several forums, in some of which they could not be brought but for such legislation. Illustrative are: actions relating to copyrights,[14] patent infringements,[15] actions for the recovery of taxes under the Internal Revenue Acts,[16] and stockholder's derivative suits.[17] Of the same type is the special venue provision of the Federal Employers' Liability Act.[18] This Act gives to an injured employee a choice of three places where he might bring his action: (1) the district of the defendant's residence; (2) the district where the cause of action arose, and (3) the district in which the defendant is doing business at the time when the action is begun.

Concededly suits like the present one, instituted by the Government to enjoin violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, are also governed by a special venue provision. Under it, such suits may be brought in the judicial district (1) where the corporation is an inhabitant, (2) in the district where it may be found, or (3) in the district where it transacts business.[19]

## III.

### Does the Doctrine of Inappropriate Forum Apply to Actions Brought Under Special Venue Statutes?

It is the contention of the Government that when an action is governed by a special venue provision, the choice of forum by the actor in the case, be he individual or government, is absolute, and the doctrine of inappropriate forum is inapplicable.

There is a language in the Gulf case which, at first blush, lends support to this contention. I so read the case myself and gave expression to the thought in a recent opinion.[20] The language reads:

"It is true that in cases under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., we have held that plaintiff's choice of a forum cannot be defeated on the basis of *forum non conveniens*. But this was because the *special venue* act under which those cases are brought was believed to require it. Baltimore & Ohio R.R. v. Kepner, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222; Miles v. Illinois Central R.R., 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104. Those decisions do not purport to modify the doctrine as to other cases governed by the *general venue* statutes." [21] (Emphasis added)

---

[14] 17 U.S.C.A. § 35.

[15] 28 U.S.C.A. § 109. The language of Mr. Justice Brandeis in Lumiere v. Mae Edna Wilder, Inc., 1923, 261 U.S. 174, 177, 43 S.Ct. 312, 67 L.Ed. 596, lends support to the view here expressed as to what a special venue statute is. Speaking of the special venue provision in copyright cases, he says:

"Ordinarily a civil suit to enforce a personal liability under a federal statute can be brought only in the district of which the defendant is an inhabitant. Judicial Code, § 51 [28 U.S.C.A. § 112]. In a few classes of cases, a carefully limited right to sue elsewhere has been given. In patent cases it is the district of which the defendant is an inhabitant or in which acts of infringement have been committed and the defendant has a regular and established place of business. Judicial Code, § 48 [28 U.S.C.A. § 109]: W. S. Tyler Co. v. Ludlow-Saylor Wire Co., 236 U.S. 723, 35 S. Ct. 458, 59 L.Ed. 808. In cases under the anti-trust laws, it is where the defendant 'resides or is found or has an agent' (Act Oct. 15, 1914, c. 323, § 4, 38 Stat. 730, 731 [15 U.S.C.A. § 15]), and, in the case of corporations, the 'district whereof it is an inhabitant' or 'any district wherein it may be found or transacts business.' "

[16] 28 U.S.C.A. § 105. The United States Court of Appeals for the District of Columbia has held that the doctrine of forum non conveniens is applicable to an action of this character. See Urquart v. American-La France Foamite Corporation, 1944, 79 U.S.App.D.C. 219, 144 F.2d 542, 544.

[17] 28 U.S.C.A. § 112.

[18] 45 U.S.C.A. § 56.

[19] 15 U.S.C.A. § 22.

[20] United States v. Standard Oil Co., D.C.1947, 7 F.R.D. 338.

[21] Gulf Oil Corporation v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 841.

462

This language must be studied in the light of the cases to which the Supreme Court was referring, the Federal Employers' Liability cases,[22] and of the opinion delivered on the same day in the Koster case and written by the same Justice.[23]

When passed in 1908, the Federal Employers' Liability Act contained no special venue provisions. In 1910, it was amended to allow the present choice. Even before the decisions in the Kepner [24] and Miles [25] cases, lower federal courts had held that the privilege of venue conferred by this section was absolute and not subject to the discretionary power of the courts to nullify the choice upon any ground.[26] Writers have inveighed against the unfairness of allowing so wide a choice.[27] Occasionally even a trial judge has expressed regret at his inability to grant relief in such cases.[28] And there is now pending a Bill before the Congress to limit the exercise of the right of the employe to choose the forum.[29] But except during the First World War, when the Director General of the Railroads, under his war powers, issued an order providing that suits should be brought only in the district where the plaintiff resided at the time of the accrual of the action, or where the cause of action arose—an order which received the approval of the Supreme Court [30]—there has been no deviation from this strict interpretation of the venue provision. And when the Supreme Court adopted, in the Kepner and Miles cases, this rigorous interpretation of the statute, it merely continued the tradition which had been inaugurated by the lower courts. They all saw in the special venue provision of this particular law a *direct* mandate of the Congress which left no room for variation. This is quite evident from the following language in the concurring opinion of Mr. Justice Jackson in the Miles case:

"The functioning of this backward system of dealing with industrial accidents in interstate commerce burdens it with perhaps two dollars of judgment for every dollar that actually reaches those who have been damaged, and it leaves the burden of many injuries to be borne by them utterly uncompensated. Such being the major burden under which the workmen and the industry must function, I see no reason to believe that Congress could not have intended the relatively minor additional burden to interstate commerce from *loading the dice a little in favor of the workman* in the matter of venue. It seems more probable that Congress intended to give the disadvantaged workmen some leverage in the choice of venue than that it intended to leave him in a position where the railroad could force him to try one lawsuit at home to find out whether he would be allowed to try his principal lawsuit elsewhere. This latter would be a frequent result if we upheld the contention made in this case and in the Kepner case." [31] (Emphasis added)

[22] Baltimore & Ohio Ry. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222; Miles v. Illinois Central Ry., 1942, 315 U.S. 698, 62 S. Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104.

[23] Koster v. Lumbermen's Mutual Co., 1947, 330 U.S. 518, 519, 67 S.Ct. 828.

[24] Baltimore & Ohio Ry. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, 136 A.L.R. 1222.

[25] Miles v. Illinois Central Ry., 1942, 315 U.S. 698, 62 S.Ct. 827, 86 L.Ed. 1129, 146 A.L.R. 1104.

[26] The following are among the Circuit Court cases in which the doctrine has been expounded: Schendel v. McGee, 8 Cir., 1924, 300 F. 273; Southern Ry. v. Cochran, 6 Cir., 1932, 56 F.2d 1019; Wood v. Delaware & H. R. Corporation, 2 Cir., 1933, 63 F.2d 235; Chesa-

peake & Ohio Ry. v. Vigor, 6 Cir., 1937, 90 F.2d 7; Southern Ry. Co. v. Painter, 8 Cir., 1941, 117 F.2d 100, 103, 106; And see, Leet v. Union Pacific Co., 1944, 25 Cal.2d 605, 609, 610, 155 P.2d 42, 158 A.L.R. 1008.

[27] See Thomas B. Gray, Venue of Actions, 33 American Bar Association Journal, July 1947, page 659.

[28] See the language of the late Judge Grover L. Moskowitz in Sacco v. Baltimore & Ohio Ry. Co., D.C.N.Y.1944, 56 F.Supp. 959.

[29] H.R. 1639.

[30] Missouri Pacific Ry. v. Ault, 1921, 256 U.S. 554, 41 S.Ct. 593, 65 L.Ed. 1087; Alabama & V. R. Co. v. Journey, 1921, 257 U.S. 111, 42 S.Ct. 6, 66 L.Ed. 154.

[31] Miles v. Illinois Central Ry., 1942, 315 U.S. 698, 62 S.Ct. 827, 832, 86 L.Ed. 1129, 146 A.L.R. 1104.

This concurring opinion has a special significance because, with four justices dissenting, there would be no majority opinion without it. Added significance is given to this language by the fact that Mr. Justice Jackson also wrote the majority opinions in the Gulf and Koster cases. And, because the question here turns on the meaning of the language already quoted in the Gulf case, the historical review which we have just given is of utmost significance. It shows clearly that what Mr. Justice Jackson, speaking for the majority of the court, meant to say was not that *any* special venue act excluded the application of the doctrine of inappropriate forum, but that *the particular special venue statute under consideration,* in the light of its history, excluded the application of the doctrine. And this is also apparent from a consideration of the opinion of Mr. Justice Jackson in the Koster case. That case involved an action brought under a special venue statute which is a part of Section 51 of the Judicial Code [32] and which reads: "except that suit by a stockholder on behalf of a corporation may be brought in any district in which suit against the defendant or defendants in said stockholders' action, other than said corporation, might have been brought by such corporation and process in such cases may be served upon such corporation in any district wherein such corporation resides or may be found."

That this is a special venue statute is evident not only from its wording but also from the following language which appears in Footnote 2 of the opinion in the Koster case [33]:

"This reinforces the view that the cause of action is that of the corporation, if reinforcement is necessary. Moreover, it is obvious that the venue statute is not concerned with facilitating suit in the district of the stockholder's residence, but assures only that suit can be brought in any district in which the corporation could have sued. Greenburg v. Giannini, 2 Cir., 140 F.2d 550, 152 A.L.R. 966. When suit is brought in the district of the stockholder's residence, the venue statute does not provide for service on the corporation 'in any district wherein such corporation resides or may be found.' Since the corporation is an indispensable party, City of Davenport v. Dows, 18 Wall. 626, 21 L.Ed. 938, it must be only the chance stockholder's suit which can be maintained at the stockholder's residence. Corporations which have stockholders in many of the states may not find it necessary to qualify to do business and consent to be sued in all the states in which they have stockholders."

It is quite evident that, if the Gulf case is interpreted as holding that the doctrine of forum non conveniens does not apply to actions brought under special venue statutes, the ruling in the Koster case does not accord with it. For, as already appears from what precedes, there the court, although dealing with a special venue statute, nevertheless applied the doctrine to the situation. The two decisions made on the same day, in opinions written by the same Justice, can be reconciled only if we read the teaching of the Gulf case as here suggested,—namely, that the court refused to apply the doctrine of forum non conveniens of Federal Employers' Liability cases, not because such cases are governed by a *special venue statute,* but for the reason that the history of the law, the desire of the Congress to overbalance the privileges under the law in favor of the railroad employes, made the choice under the particular venue statute absolute.[34]

---

[32] 28 U.S.C.A. § 112.

[33] Koster v. Lumbermen's Mutual Co., 1947, 330 U.S. 518, 519, 67 S.Ct. 828, 831.

[34] See cases in Notes 7 and 8.

Since the foregoing opinion was written, two articles have appeared which were not available at the time, in which the writers reach the identical conclusion here announced as to the meaning of the Gulf and Koster cases. See: Robert Braucher, The Inconvenient Federal Forum, 1947, 60 Harvard Law Review, p. 908, especially pages 926, 927; Edward L. Barrett, Jr., Forum Non Conveniens, 1947, 35 California Law Review, page 380, especially pages 399, 402.

It is significant that both writers consider the statement in the Gulf case on which the chief contention of the Government here was based, and which is quoted in Portion III of the opinion, dictum, not necessary for the decision. Barrett goes further and holds that there is no

So the discussion which precedes may be summed up in this manner:

█ The doctrine of inappropriate forum can be applied by courts in all cases in which it has been applied in the past in Anglo-American jurisprudence. And this should be done, whether dealing with a general or with a special venue statute. Only when the legislative history shows an intent to confer a right so absolute as to exclude any interference on the part of courts, are we justified in failing to give effect to this doctrine.

## IV.

### The Venue Here.

█ We have already referred to the venue provision in the Sherman Anti-Trust Act.[35] The power of the Congress to enact such provision is undisputed.[36] But there is nothing in its legislative history to indicate that the Congress, by giving to the Government a choice of forums, intended to deprive the courts of their right to forbid resort to an inappropriate forum.

That the Congress did not intend to make the Government's choice absolute is also evidenced by the provision of the Act which reads:[37]

"Whenever it shall appear to the court before which any proceeding under section 4 of this title may be pending, *that the ends of justice require* that other parties should be brought before the court, the court may cause them to be summoned, whether they reside in the district in which the court is held or not; and subpoenas to that end may be served in any district by the marshal thereof." (Emphasis added)

Had the Congress intended to give to the Government complete mastery over the situation, it certainly would not have made the presence of other parties dependent upon the determination by the court that the ends of justice require such presence. Of the nature of this power, a three-judge court said in United States v. Standard Oil of New Jersey[38]:

"The question presented by the petition for that purpose was, not in which court the ends of justice required the complainant to choose to institute its suit, but whether or not in this suit the ends of justice required that the nonresident defendants should be brought in.

"The exercise of the power conferred upon the courts by the Constitution and the acts of Congress, to acquire jurisdiction of controversies and parties by the issue and service of their process, is not discretionary with the courts, when a complainant demands it. It is an imperative duty, which may not be renounced, and whose discharge may not be evaded. It is the duty of a court of equity to finally determine the entire controversy before it, and to do complete justice by adjusting all the rights involved therein. Hence, in every suit in which the power to acquire jurisdiction of the subject-matter and of the parties is conferred upon the court, the duty is imposed upon it, if its discharge is

---

valid foundation for the distinction between general and special venue statutes and asserts the power of the courts to apply the doctrine even in cases arising under the Federal Employers' Liability Act, notwithstanding the impression gained from some of the later cases that the venue privilege conferred by the statute is absolute.

[35] 15 U.S.C.A. § 22.

[36] Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684.

[37] 15 U.S.C.A. § 5.

[38] C.C., 152 F. 290, 296. Counsel for the Government seem to think that this case teaches that the doctrine of forum non conveniens does not apply to anti-trust cases. I do not so read it. It is to be borne in mind that the court was not asked to dismiss the action because of the choice of inappropriate forum. An order had been made by the Circuit Court to bring in the non-resident defendants. They moved to vacate the order and to quash the service of summons upon them. The court having exercised its judgment, having granted the order, and having determined that the ends of justice required the presence of the non-resident defendants, the matter was at an end. And the reviewing court, as the first sentence of the quotation says distinctly, *was not* determining in which court the ends of justice required the complainant to institute its suit, *but whether the ends of justice required that other defendants be brought in.* Clearly then, the question which confronts us here was not before the court in that case, and the ruling in it does not help the position of the Government in this case.

invoked by the complainant, to summon and hear, before decision, not only every indispensable party, but every necessary party within reach of its process, every party who has an interest in the controversy, and who ought to be made a party to the suit in order that the court may finally adjudicate the whole matter, although if he were not amenable to process, final justice might be administered between the other parties without his presence."

In giving effect to public policy through suits of this character, courts are more likely to grant or withhold relief than in dealing with private interests.[39]

That the facts in this case call for the application of the doctrine of forum non conveniens is apparent from the nature of the action and from the analysis of the facts presented in the affidavits which I made in the companion criminal prosecution.[40] Practically the same affidavits are before me now. They show that the trial of the case in this district would require the chief defendants to go to places distant from the location of their business, to bring witnesses from afar, to move into this district records which are located in distant cities where their headquarters are maintained, and, in case the decree asked for by the Government is made, it will call for control of foreign corporations over a long period of years by a court which is far removed from the principal places of business of the main defendants. Indeed, the very allegations of the Complaint indicate that National and American were the instrumentalities through which this monopoly is established, that they, especially National, are responsible for the tie-ins, through acquisition of stock by the suppliers and for the monopolistic practices which *they and not the local operating companies* engineered with the suppliers and through which the throttling of competition in supplies and equipment, of which the Government complains is achieved.

We should also emphasize the fact, already adverted to elsewhere in this opinion, that the Government by the decree it asks in this case, is seeking to wrest control of local transportation companies from National, American and Pacific and to require them to divest themselves of such control. And *this type of long distance control of corporations who are not engaged in business in the state* is one of the considerations which have led to the applications of the doctrine of forum non conveniens.

The language of the court in Williams v. Green Bay & W. R. Co. is very opposite [41]:

"We mention this phase of the matter to put the rule of forum non conveniens in proper perspective. It was designed as an 'instrument of justice.' Maintenance of a suit away from the domicile of the defendant—whether he be a corporation or an individual—might be vexatious or oppressive. An adventitious circumstance might land a case in one court when in fairness it should be tried in another. *The relief sought against a foreign* corporation may be so extensive or call for such detailed *and continuing supervision that the matter could be more* efficiently handled nearer home." (Emphasis added)

Of the nine defendants, five—National, American, Pacific, Mack and Phillips—are not doing business in California and are not to be found in it. Federal Engineering merely makes investments for Standard, does no business in the district, and is not found in it. The control by National of the Los Angeles Transit Lines and of Long Beach City Lines, through ownership of their corporate stock, does not constitute "doing business" in the State.[42]

It follows that the factual situation here calls for the application of the doctrine of forum non conveniens, in the interest of justice, just as the same facts in the companion criminal prosecution required its transfer to another district. And this conclusion is also commanded by the fact that the decree sought by the Government

[39] Virginian R. Co. v. System Federation, 1937, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789.

[40] United States v. National City Lines et al., D.C.Cal.1947, 7 F.R.D. 393.

[41] 326 U.S. 549, 550, 66 S.Ct. 284, 287, 90 L.Ed. 311.

[42] Peterson v. Chicago etc. Ry., 1907, 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841; Philadelphia etc. Ry., v. McKibbin, 1917, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710; People's Tobacco Co. Ltd. v. American Tobacco Co., 1917, 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas. 1918C, 537.

will require control of the parent companies, National and American, over a long period of time, by a court far removed from their domiciles.

The Government has suggested that a dismissal of this Complaint might bring about an impossible situation. They refer to the fact that the principal places of business of the defendants are scattered throughout the country. And they express the fear that no matter where the Government reinstitutes its suit, some of the defendants might urge the application of the doctrine of inappropriate forum to them. The matter has received serious consideration. A court of equity should aim to balance societal and individual interests and to maintain the proper equilibrium between private rights and public weal.[43] And, in applying a statute like the Sherman Anti-Trust Act embodying a Governmental policy of long standing, which aims to maintain in the economic field some semblance of equality and to prevent the hand of monopoly from suppressing or impeding the free flow of commerce between states, we should hesitate to adopt an approach to a problem like the one involved here which would result in quashing forever what the Government considers a meritorious suit.

But I feel that no disastrous result to the enforcement of the anti trust laws need, *necessarily,* follow a ruling adverse to the Government on this motion. Our action is reviewable on direct appeal to the Supreme Court,[44] within a maximum of sixty days after the entry of the final decree of dismissal. I am also of the view that this suit can be refiled in the Northern District of Illinois, Eastern Division, where National and American have their principal place of business, and withstand any further attack on venue. More, under date of September 18, 1947, counsel for all the defendants have joined in a letter in which they state that all the defendants believe that the Northern District of Illinois, Eastern Division, *to which the companion criminal prosecution has already been transferred,* is the proper forum for this action and that if this motion is granted and the suit is refiled there, the defendants will not move for its dismissal on the ground of inconvenient forum. At their request, the statement has been made a part of the record in this case.

In sum, whether the Government challenges this ruling and seeks a direct appeal to the Supreme Court within the sixty-day period, or, accepting it, refiles, the "setback" will be temporary only. And the insuccess of the Government being based not on the court's disapproval of the social philosophy behind the Sherman Anti-Trust law,[45] but only on a disagreement as to the tactics in a particular case, which can be remedied readily, the Government's determination to enforce the statute vigorously will stand unaffected.

The motions to dismiss are granted.

---

[43] Roscoe Pound, A Survey of Social Interests, 1943, 57 Harvard Law Review, 1–39; Roscoe Pound, Law and the State, Jurisprudence and Politics, 1944, 57 Harvard Law Review 1193 et seq.; Roscoe Pound, A Survey of Public Interests, 1945, 58 Harvard Law Review, 909–929.

[44] 15 U.S.C.A. § 29.

[45] My attitude towards this law has been expressed in the following opinions: United States v. Heating, Piping & Air Conditioning Contractors Ass'n, D.C.Cal.,1940, 33 F.Supp. 978; United States v. Food and Grocery Bureau, D. C.Cal.,1942, 43 F.Supp. 966; United States v. Food and Grocery Bureau, D.C.Cal.1942, 43 F.Supp. 974; United States v. San Francisco Electrical Contractors Ass'n, D.C.Cal.,1944, 57 F. Supp. 57.